CP-2000-12                                    1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>    Luis E. Pinto Andino | Querella<br><br>2002 TSPR 25<br><br>156 DPR _____ |

Número del Caso: CP-2000-12

Fecha: 20/febrero/2002

Oficina del Procurador General:

                    Lcdo. Reynaldo X. Medina Carrillo
                    Procurador General Auxiliar

Abogado de la Parte Querellada:
                    Lcdo. Pedro Nicot Santana

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


In re:

Luis E. Pinto Andino

                          CP-2000-12




                         PER CURIAM



San Juan, Puerto Rico, a 20 de febrero de 2002.


El presente recurso nos brinda la oportunidad de expresarnos sobre la responsabilidad ética de un abogado cuando éste no puede localizar a su cliente desaparecido y el término prescriptivo de la acción que le ha sido encomendada está por expirarse.

                          I

A tenor con lo ordenado por este Tribunal, el Procurador General sometió un Informe para que decidiéramos si procedía la presentación

de una querella en contra del Lcdo. Luis E. Pinto Andino (en adelante, licenciado Pinto Andino o el querellado) por violaciones éticas incurridas en la representación del Sr. Wilfredo Carrasquillo Osorio en una acción que había incoado contra las tiendas K-Mart. Después de examinar dicho Informe, ordenamos al Procurador General que formulara la querella correspondiente. Este así lo hizo y presentó la querella que nos ocupa.

En síntesis, el Procurador sostiene que el licenciado Pinto Andino incurrió en una violación del Canon 18 de los Cánones de Ética Profesional al no defender diligentemente los intereses del señor Carrasquillo Osorio en la acción presentada contra K-Mart. Igualmente, le imputa haber violado el Canon 26. Después de examinar la contestación del abogado a dichos cargos nombramos un Comisionado Especial para oír y recibir la prueba. Oportunamente éste nos ha sometido su Informe con sus determinaciones. Del mismo surgen los siguientes hechos.

El Sr. Wilfredo Carrasquillo Osorio le solicitó al licenciado Pinto Andino que lo representara en una reclamación de daños en contra de la tienda K-Mart. El referido abogado aceptó la representación legal en dicha reclamación, pero no retuvo dinero del cliente. Al reunirse con el licenciado Pinto Andino, Carrasquillo Osorio le informó que residía en un refugio desde el Huracán Hortensia por lo que no tenía dirección postal ni teléfono. Por su parte, el querellado le entregó una tarjeta de presentación con sus números telefónicos y quedaron en

comunicarse a través del Sr. Julio Osorio, pariente del cliente, quien se encontraba presente en la reunión.

Posteriormente Carrasquillo Osorio visitó las oficinas del licenciado Pinto Andino y le entregó copia de un informe del agente del orden público que intervino con él en las afueras de la tienda el día que alegadamente fue detenido por personal de seguridad de la empresa por sospechar que él había hurtado mercancía de la misma. El policía que investigó no encontró en poder de Carrasquillo Osorio artículo alguno por el cual no hubiese pagado. Dos (2) días después el licenciado Pinto Andino y el señor Carrasquillo Osorio visitaron la tienda y tomaron fotos del lugar y entrevistaron al Gerente de la misma, quien no se acordaba del incidente. Tampoco pudieron identificar testigo alguno que pudiese corroborar lo expuesto por Carrasquillo Osorio. El Comisionado también explicó que el licenciado Pinto Andino le indicó a Carrasquillo Osorio que era necesario proseguir con la búsqueda de otros testigos para poder instar la acción y le solicitó que continuara con esas gestiones y oportunamente se comunicara con él.

Luego de varios meses sin que Carrasquillo Osorio regresara a la oficina ni se comunicara con el querellado, éste contactó al Sr. Julio Osorio para que instara al cliente a llamarlo. Sin embargo, Carrasquillo Osorio no se comunicó con su abogado hasta pocos días antes de que venciera el término de un (1) año para instar la acción. En esa ocasión el licenciado Pinto Andino le informó su inquietud con la falta de información y la poca

cooperación recibida en el caso. Sin embargo, acordaron formular un requerimiento de pago a K-Mart que tuviera el efecto de interrumpir el término prescriptivo. El abogado preparó dicha reclamación y se la entregó al cliente para que la enviara por correo certificado y pagara el franqueo correspondiente.

En su Informe, el Comisionado relata que el licenciado Pinto Andino exigió del señor Carrasquillo Osorio que suscribiera al dorso de una copia del requerimiento, una nota en la que hiciera constar que recibía el documento para diligenciarlo por correo certificado. Además, el referido abogado le pidió a su cliente que una vez depositara el documento en el correo regresara a la oficina para llevar el recibo acreditando el envío del mismo. El señor Carrasquillo Osorio se llevó el documento para hacer la gestión que se le encomendó, pero no regresó a la oficina del abogado, por lo que éste último desconocía si efectivamente el requerimiento de pago se había enviado. Ante la incertidumbre sobre el envío de la carta a K-Mart, y ante la inminente prescripción de la acción, el licenciado Pinto Andino presentó en el Tribunal de Primera Instancia una demanda de daños y perjuicios en representación del señor Carrasquillo Osorio, en contra de la tienda K-Mart. Según se desprende del Informe del Comisionado, el querellado presentó la referida acción con el propósito de interrumpir la prescripción y ganar algún tiempo para ver si lograba comunicación con el cliente. A tenor con esto, el Comisionado indica: "[m]ovido con ese ánimo, al presentar la demanda [el

querellado] no incluyó el formulario correspondiente para que se le expidiera el emplazamiento."

Posteriormente, el licenciado Pinto Andino recibió una llamada de un funcionario de K-Mart en la que le informó el recibo de la reclamación enviada por correo y le solicitó la evidencia disponible para sostener la reclamación con miras a llegar a un acuerdo extrajudicial. El referido abogado trató de comunicarse con el cliente a través del Sr. Julio Osorio, pero éste le informó que Carrasquillo Osorio se había trasladado a los Estados Unidos sin que se conociera su dirección. En vista de esto, el querellado no pudo suministrar la prueba solicitada por K-Mart.

Al transcurrir el término de seis (6) meses sin que se hubiese diligenciado el emplazamiento en el caso instado, el foro de instancia requirió que se expusieran las razones por las cuales no debía desestimarse la acción presentada. Al recibir esta orden, el licenciado Pinto Andino  compareció para justificar la falta de diligenciamiento y solicitó que se expidieran los emplazamientos correspondientes. Esta solicitud fue acogida por el tribunal. Sin embargo, ante la ausencia de su cliente, el licenciado Pinto Andino optó por no diligenciar los referidos emplazamientos.

En vista de la falta de trámite, seis (6) meses más tarde el foro de instancia procedió nuevamente a dictar orden requiriéndole a la parte demandante que mostrara causa por la cual no debía desestimar la acción instada en vista que había

transcurrido el término de seis (6) meses sin que se hubiera diligenciado el emplazamiento. El querellado respondió a esta nueva orden solicitando el desistimiento sin perjuicio del caso. No obstante, el foro de instancia denegó su solicitud y le especificó que había dictado sentencia desestimando la acción con perjuicio por haber expirado el término reglamentario sin haber emplazado a la parte demandada y sin haber solicitado oportunamente una prórroga. El licenciado Pinto Andino intentó que se dejara sin efecto esta sentencia pero no tuvo éxito.

Así las cosas, tras transcurrir dos (2) años y medio desde su última visita a la oficina del querellado, Carrasquillo Osorio se comunicó con el licenciado Pinto Andino y le solicitó el dinero que se le reclamó a K-Mart. El querellado le informó sobre lo ocurrido y le notificó que no se había recibido dinero alguno de K-Mart. Inconforme con dicho trámite, Carrasquillo Osorio presentó una queja contra el licenciado Pinto Andino "porque él tenía una copia del requerimiento de pago por $25,000 y quería saber que sucedió con el requerimiento." Dicha queja es la que origina la querella de autos.

II

En síntesis, la controversia que nos ocupa se circunscribe a dilucidar la responsabilidad ética de un abogado cuyo cliente ha desaparecido y se encuentra con que el término prescriptivo de la acción que se le ha encargado está por expirarse. Veamos.

La literatura jurídica que ha analizado este tema estima que un abogado que se enfrenta a esta situación debe desplegar un esfuerzo razonable y diligente para localizar a su cliente.[1] Su obligación ética no cesa por el mero hecho de perder comunicación con éste. En tales casos, el abogado debe desplegar un esfuerzo razonable y diligente para comunicarse con su cliente y advertirle de la situación. Claro está, lo que constituye un esfuerzo "razonable y diligente" para localizar al cliente dependerá de la totalidad de las circunstancias del caso.[2] En ocasiones bastará con intentar comunicarse con el cliente mediante teléfono, correo o a través de sus familiares o personas allegadas. No obstante, habrá situaciones en las que tales gestiones no serán suficientes. Por ello, es importante que al iniciar la gestión profesional los abogados recopilen aquella información personal de sus clientes que facilite la comunicación entre ambos.

Ahora bien, una vez el abogado ha desplegado tal grado de diligencia en la búsqueda de su cliente y aún así no logra localizarlo cabe preguntar si éticamente está compelido a radicar una acción judicial para interrumpir el término prescriptivo de la acción que se le ha encomendado. Aunque los contornos de la obligación ética en este tipo de casos no están totalmente

---

[1] Responsibility to Client who has Disappeared, 1996 NC Eth. Op. RPC 223 (N.C.St.Bar.); Recent Supreme Court Ethics Advisory Opinions, 44-FEB R.I. B.J. 31 (1996); ABA/BNA Lawyers' Manual on Professional Conduct Sec. 45:1204-1205 (1984); State Bar of California Standing Committee on Professional Responsibility and Conduct, Formal Opinion No. 1989-111.

delimitados, el peso de las autoridades se inclina por sostener que de ordinario un abogado que se enfrenta a esta situación no está obligado a presentar una demanda para interrumpir tal término si el abogado ha realizado un esfuerzo razonable por localizar a su cliente (el cual le permite deducir que no es probable que el cliente regrese) y la desaparición de éste no es producto de la conducta negligente del propio abogado.[3] Claro está, la obligación ética del abogado dependerá de las circunstancias particulares del caso.[4] Esto pues, habrá que examinar si la no disponibilidad del cliente constituye una desviación de lo acordado por las partes.[5]

Sin embargo, si bien es cierto que no existe el deber de radicar la referida acción judicial, en tales circunstancias no constituiría una violación ética el que el abogado inste la correspondiente demanda para interrumpir el término prescriptivo pertinente.[6] Si este es el proceder, y aún así el cliente no aparece, el abogado podría solicitarle al tribunal autorización para renunciar a la representación legal del cliente si luego de volver a desplegar un esfuerzo razonable y diligente por contactar a su cliente el mismo resulta

---

[2] ABA/BNA Lawyers' Manual on Professional Conduct Sec. 45:1205 (1984)
[3] Duty of Lawyer to File Suit when Client has Disappeared, 1981 ABA Informal Op. 1467 (1981); 1987 FL Eth. Op. 72-36 (Reconsideración) (Fla.St.Bar Assn.);
[4] Id.
[5] 1987 FL Eth. Op. 72-36 (Reconsideración) (Fla.St.Bar Assn.)
[6] 1987 FL Eth. Op. 72-36;(Fla. St. Bar Assn.).

infructuoso.[7] En tales casos el abogado deberá acreditar al tribunal la situación acontecida, haciendo constar los esfuerzos desplegados en la búsqueda de su cliente y las gestiones realizadas para advertirle de la situación.[8] Corresponde a dicho foro determinar si autoriza la renuncia, evaluando la suficiencia de los esfuerzos desplegados, y resolver lo que en derecho proceda con respecto a la acción judicial instada. Igualmente, el abogado deberá desplegar aquellos esfuerzos razonables para notificar al cliente del dictamen del tribunal.

Lo que sería improcedente es que un abogado inste la correspondiente acción judicial y abandone la misma tras estimar que con la radicación de la demanda finalizan sus obligaciones para con el cliente. Tal curso de acción comprometería innecesariamente la causa de su cliente pues lo expondría a que se archive la misma por falta de trámite.

A la luz de esta normativa, pasemos a discutir la situación que tenemos ante nos.

---

[7] 1993 PA Eth. Op. 93-58 (Pa. Bar. Assn. Comm. Leg. Eth. Prof. Resp.); State Bar of California Standing Committee on Professional Responsibility and Conduct, Formal Opinion No. 1989-111.

[8] Así, el abogado deberá acreditar ante el tribunal sus esfuerzos para localizar al cliente y sus gestiones para notificarle a éste su intención de renunciar a tenor con las obligaciones éticas exigidas. Véase, Matos v. Metropolitan Marble Corporation, 104 D.P.R. 122 (1975); Canon 20 de los de Ética Profesional, 4 L.P.R.A. Ap.IX, C. 20 y; Regla 19 de las Reglas para la Administración del Tribunal de Primera Instancia del Estado Libre Asociado de Puerto Rico del 30 de junio de 1999, 4 L.P.R.A. T.4 Ap. 2-B R. 19.

III

Como mencionamos anteriormente, desde el inicio de la relación profesional el querellado confrontó problemas de comunicación con su cliente. Aunque el referido abogado intentó comunicarse infructuosamente con el cliente e inclusive le advirtió de su falta de cooperación, no fue hasta cercana la fecha de que prescribiera la acción que el cliente acudió a las oficinas del querellado. Por ello, ante la incertidumbre sobre la interrupción extrajudicial y ante la inminencia de la prescripción de la acción, el querellado optó por radicar acción judicial para interrumpir el referido término. No incidió al proceder de conformidad.

Ya hemos mencionado que aunque de ordinario un abogado que no pueda localizar a su cliente desaparecido no tiene el deber ético de instar una acción judicial para interrumpir el termino prescriptivo, tal proceder no es, sin mas, inapropiado. A la luz de las circunstancias del caso, procede concluir que el querellado no incurrió en conducta antiética al instar la correspondiente demanda. Sin embargo, cabe preguntarse si el curso de acción que el querellado siguió tras interponer la acción judicial fue el apropiado. Estimamos que no.

Del Informe del Comisionado no se desprende que la prueba recibida girara en torno a las gestiones que el querellado realizó para contactar a su cliente luego de instada la acción judicial. De todas maneras, aunque asumamos que las mismas fueron diligentes y razonables, su proceder en el foro judicial deja mucho que desear. Una vez el querellado optó por

interrumpir judicialmente el término prescriptivo, y no proseguir con las gestiones extrajudiciales, debió advertir que la activación de la maquinaria judicial generaría una serie de responsabilidades con las que debía cumplir. No podía meramente presentar la demanda y esperar hasta que el propio tribunal le inquiriera sobre los motivos de su inacción. Claro está, el querellado podía solicitar al tribunal que le autorizara renunciar a la representación legal de su cliente luego de expresarle a dicho foro lo sucedido y acreditar sus gestiones para localizar al cliente y advertirle de la situación. Al no rendirle cuentas al tribunal, se exponía a que dicho foro presumiera que su falta de trámite configuraba una ausencia de interés y diligencia. El querellado no debió esperar hasta que el tribunal le apercibiera sobre la desestimación. Antes, debió advertir al tribunal de la situación, acreditando las gestiones realizadas para contactar al cliente, y solicitar autorización para renunciar. El no mantener al tribunal informado, acarreaba el riesgo de que la actuación del querellado afectara la acción de su cliente. Una vez se aseguró de la ausencia de su cliente el querellado pudo solicitar la renuncia al tribunal una vez acreditara las gestiones realizadas. Ante situaciones de este tipo, procede que los abogados estén al tanto del trámite judicial y procedan de conformidad. Lo que no procede es presentar la correspondiente acción y desatender el trámite judicial, comprometiendo innecesariamente la causa de acción del cliente.

No obstante, por tratarse de un asunto sobre el cual no nos habíamos expresado antes y en vista de las circunstancias particulares del caso, procede decretar el archivo de la querella instada. Se apercibe al licenciado Pinto Andino que en el futuro deberá cumplir con las normas antes expuestas así como con los Cánones de Ética Profesional.

Se dictará la Sentencia correspondiente.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


In re:

Luis E. Pinto Andino


CP-2000-12


SENTENCIA


San Juan, Puerto Rico, a 20 de febrero de 2002.


Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, se decreta el archivo de la querella instada contra el Lcdo. Luis E. Pinto Andino.


Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. La Juez Asociada señora Naveira de Rodón disintió con opinión escrita. El Juez Asociado señor Fuster Berlingeri no intervino.


Carmen E. Cruz Rivera
Secretaria del Tribunal Supremo Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Luis E. Pinto Andino

                                      CP-2000-12

Opinión disidente emitida por la Juez Asociada señora NAVEIRA DE RODÓN

San Juan, Puerto Rico, a 20 de febrero de 2002

Por entender que el Lcdo. Luis. E. Pinto Andino (en adelante Lcdo. Pinto o querellado), no incurrió en violación alguna a la ética profesional, disentimos del dictamen mayoritario.

I

Este caso comenzó con una querella presentada por el Sr. Wilfredo Carrasquillo Osorio (en adelante Sr. Carrasquillo o querellante) contra el Lcdo. Pinto.  El 14 de diciembre de 2000 el Procurador General formuló la querella correspondiente.

Luego de que el querellado contestara a dichos cargos, nombramos un Comisionado Especial, quien nos sometió el Informe correspondiente, del cual surgen los hechos que se relatan a continuación.

En octubre de 1996, el Lcdo. Pinto asumió la representación legal del Sr. Carrasquillo en una reclamación en daños y perjuicios del querellante contra la tienda K-Mart, por hechos ocurridos el 19 de septiembre de 1996. El Sr. Carrasquillo le informó a su abogado que desde el paso por Puerto Rico del Huracán Hortensia vivía en un refugio y por consiguiente, no tenía dirección postal ni teléfono.  Por lo tanto, acordaron que las comunicaciones entre ellos se harían a través del Sr. Julio Osorio, un pariente del Sr. Carrasquillo.  El Lcdo. Pinto procedió entonces a entregarle su tarjeta de presentación, en la cual constaban sus números de teléfono.  **El Lcdo. Pinto no retuvo suma de dinero alguna del Sr. Carrasquillo al aceptar representarlo legalmente**.

El 21 de octubre de 1996, el Sr. Carrasquillo y el Lcdo. Pinto se reunieron en las oficinas del letrado.  El querellante llevó consigo el informe de la policía relacionado a los hechos del 19 de septiembre de 1996. En dicho informe constaba que un guardia de seguridad de K-Mart detuvo al Sr. Carrasquillo por sospechar que éste se había apropiado de un artículo de la tienda sin haberlo pagado.  El Sr. Carrasquillo fue detenido fuera del establecimiento, frente al supermercado Pueblo Xtra que se encontraba en el mismo centro comercial.  Allí mismo, el policía estatal Sr. Ángel L. Mangual Roger, realizó una investigación, pero no encontró en poder del Sr. Carrasquillo artículo alguno por el cual éste no hubiese pagado.

Luego de ver el informe, **el Lcdo. Pinto entendió que el caso era meritorio**.  No obstante, estimó que aunque el testimonio del Sr. Carrasquillo y el informe de la policía eran suficientes para probar el caso, entendió necesario fortalecerlo con otra prueba, y así se lo manifestó a su cliente.  Por esta razón, **el Lcdo. Pinto comenzó a hacer gestiones para investigar los hechos que le relató el Sr. Carraquillo**.  Conjuntamente con el Sr. Osorio, el Lcdo. Pinto visitó la tienda K-Mart donde alegadamente había ocurrido el incidente, tomó fotos del lugar y entrevistó al Gerente

del establecimiento, quien indicó no recordar los hechos. Ante esta situación, el querellado le indicó al Sr. Carrasquillo que era necesario buscar más testigos para entablar una acción en los tribunales. Le solicitó que cooperase en esa gestión y que luego se comunicara con él.

Pasaron varios meses sin que el Sr. Carrasquillo se comunicara con el querellado. En mayo de 1997 el Lcdo. Pinto contactó al Sr. Osorio en un esfuerzo por conseguir comunicarse con su cliente, el Sr. Carrasquillo. Sin embargo, no fue hasta septiembre de 1997, pocos días antes de que venciera el término prescriptivo de la acción, que el Sr. Carrasquillo finalmente se pudo poner en contacto con el Lcdo. Pinto. Aunque el letrado le manifestó en ese momento a su cliente su preocupación por la poca información que tenía para entablar la acción judicial, y la casi absoluta ausencia de cooperación recibida por parte suya, éstos acordaron realizar un requerimiento en pago a K-Mart **con el propósito de interrumpir el término prescriptivo**.

Una vez preparado el requerimiento en pago por la cantidad de veinticinco mil (25,000) dólares, el Lcdo. Pinto le dio instrucciones al Sr. Carrasquillo para que éste enviase el documento por correo certificado y que luego de enviarlo, regresara a su oficina con el recibo acreditativo de dicho envío. El Sr. Carrasquillo se fue de la oficina del Lcdo. Pinto con el documento, pero no regresó como le indicara el Lcdo. Pinto.

Así pues, ante la incertidumbre sobre si el Sr. Carrasquillo efectivamente había enviado el requerimiento, y el consiguiente desconocimiento sobre si se había interrumpido o no el término prescriptivo de la acción, el Lcdo. Pinto procedió a presentar, el día 16 de septiembre de 1997, una demanda en daños y perjuicios contra K-Mart. Sin embargo, el querellado no incluyó el formulario correspondiente para que se expidiese el emplazamiento. El Comisionado señaló en su informe que el querellado presentó la demanda con el propósito de interrumpir el término prescriptivo y que "movido por ese ánimo" no incluyó los referidos formularios

Días después, el Lcdo. Pinto recibió una llamada del Sr. Alex Díaz, funcionario de K-Mart, informándole que había recibido el requerimiento en pago enviado por correo. El Sr. Díaz le solicitó al letrado evidencia que

sostuviese la reclamación de su cliente, en ánimo de llegar a un acuerdo extrajudicial. **Ante esta situación, el Lcdo. Pinto procedió una vez más, a tratar de establecer comunicación con su cliente a través del Sr. Osorio**, pero éste le informó que el Sr. Carrasquillo se había marchado a los Estados Unidos sin dejar alguna dirección donde se pudiesen comunicar con él. **Al no poder contactar a su cliente, el Lcdo. Pinto no pudo llegar a un acuerdo extrajudicial con K-Mart**.

Pasados seis (6) meses desde la radicación de la demanda sin que se diligenciaran los emplazamientos correspondientes, el tribunal de instancia emitió una orden solicitando que se expusieran razones por las cuales no debía desestimarse la acción por falta de trámite, de acuerdo a la Regla 39.2(b) de Procedimiento Civil, 32 L.P.R.A. Ap.III. El Lcdo. Pinto contestó este requerimiento del tribunal, y dicho foro emitió una orden, notificada el 17 de abril de 1998, para que se expidieran los emplazamientos correspondientes en el caso. No obstante, el querellado optó por no diligenciar los referidos emplazamientos. Según el informe del Comisionado, **el letrado no diligenció los emplazamientos "ante la ausencia de su cliente y considerando que si procedía a emplazar estaría exponiendo a la otra parte a gastos del litigio**, y considerando además que si diligenciaba el emplazamiento y su cliente no aparecía le iban a desestimar el caso de cualquier forma."

El 23 de octubre de 1998, el tribunal de instancia dictó una orden dirigida al demandante para que mostrase causa por la cual no debía desestimarse su acción por falta de trámite. El Lcdo. Pinto contestó esta orden el 3 de diciembre de 1998, **solicitando se diese por desistido el caso y se decretase el archivo sin perjuicio del mismo** por "total falta de interés del demandante y desconocimiento total de su paradero y su dirección residencial."[9] El tribunal de instancia, mediante orden notificada el 30

---

[9] Cabe destacar que lo que solicitó el Lcdo. Pinto fue el **desistimiento del caso**. De acuerdo a la Regla 39.1 (a)(1) de Procedimiento Civil, un demandante puede desistir de un pleito sin orden del tribunal antes de que la parte adversa haya presentado una alegación responsiva. Según hemos interpretado, un desistimiento en estas circunstancias, "constituye una manifestación inequívoca de la voluntad de desistir... **Tal manifestación**

de diciembre, declaró no ha lugar esta petición debido a que el 4 de diciembre dicho foro había emitido una sentencia decretando el archivo con perjuicio del caso por no haberse diligenciado emplazamiento alguno a la parte demandada. Finalmente, **en un último esfuerzo por salvar la causa de acción de su cliente, el Lcdo. Pinto solicitó que se dejara sin efecto la sentencia**, pero no tuvo éxito en esa gestión.

En abril de 2000, treinta (30) meses después de su última visita a la oficina del Lcdo. Pinto, el Sr. Carrasquillo se comunicó con su abogado solicitándole el dinero de su reclamación contra K-Mart. El querellado le informó que el tribunal de instancia había archivado con perjuicio la demanda, y que no se había recibido suma alguna de dinero por parte de K-Mart. Inconforme con estas explicaciones, el Sr. Carrasquillo procedió a presentar la queja que dio origen al caso de autos. Alegó el querellante que "él tenía una copia del requerimiento en pago por $25,000 y quería saber qué sucedió con tal requerimiento."

Sometido el caso, el Tribunal resuelve apercibir al Lcdo. Pinto por entender que éste tenía la obligación de advertir al tribunal de que no había podido contactar a su cliente, de acreditar ante el foro judicial las gestiones realizadas para contactarlo, y solicitar autorización para renunciar a su representación legal.

Por las razones que expondremos a continuación no podemos suscribir el criterio mayoritario. Veamos.

II

De entrada deseamos aclarar que lo que nos mueve a disentir en este caso no es un total desacuerdo con las normas jurídicas y éticas que se establecen en la opinión Per Curiam. Lo que motiva este disenso es la

---

**no admite oposición de la parte adversa ni requiere de la aprobación del tribunal para que surta efecto,** de modo que causa la inmediata terminación del litigio." Véase García Aponte *et al.* v. E.L.A. *et al.,* 135 D.P.R. 137, pág. 145 (1994) (Énfasis suplido). No obstante, aunque este desistimiento provoca la terminación del litigio que inició, "la causa de acción o

aplicación automática de dichas normas al caso de autos, sin considerar la situación muy particular que éste presenta.

Estamos de acuerdo en que el hecho de presentar una demanda con el propósito principal de interrumpir el término prescriptivo de la acción no constituye una violación a la ética judicial. También estamos de acuerdo en que una vez se presenta una demanda ante el foro judicial, el abogado no puede desentenderse del asunto y cruzarse de brazos. Con lo que no podemos estar de acuerdo es que la opinión Per Curiam parece imponerle al abogado que ha presentado una demanda en estas circunstancias, por razón de haber perdido contacto con su cliente, un deber ético no solamente de tratar de contactar al cliente, sino un deber ulterior de acreditar dichas gestiones al tribunal como requisito para solicitar la renuncia a la representación de éste, y además, realizar "esfuerzos razonables para notificar al cliente del dictamen" al cual el tribunal pueda llegar en su día. Parece ser el criterio de la mayoría que sólo de esta forma podrá el abogado liberarse de responsabilidad ética.

Consideramos que la aplicación automática de estas normas sin considerar las circunstancias particulares de cada caso es sumamente injusto para la profesión legal, como resulta ser injusto en este caso para el Lcdo. Pinto. Entendemos que el proceder que indica la mayoría como correcto, **es una de las maneras en que un abogado puede enfrentar una situación como la de autos, pero no la única**. Somos de criterio de que la manera de actuar del Lcdo. Pinto en este caso, aunque distinta a la que sugiere la mayoría, también fue correcta, y no configura en modo alguno una violación a la ética profesional.

Al analizar la gestión profesional del letrado, encontramos que éste presentó una demanda con el propósito de salvaguardar el derecho de su cliente a un remedio legal. Posteriormente, hizo gestiones para ponerse en contacto con su cliente, a través de la persona contacto que el mismo cliente le había indicado, el Sr. Osorio. El hecho de que no hubiese

---

reclamación ejercitada no se extingue, puede reclamarla una vez más." Véase Kane v. República de Cuba, 90 D.P.R. 428 (1964).

informado esas gestiones al tribunal no conlleva una violación ética de su parte. En las circunstancias particularmente difíciles de este caso, el Lcdo. Pinto hizo todo lo que razonablemente estaba a su alcance para "mantener viva" la causa de acción de su cliente. Aun más, en consideración a la parte demandada, y actuando responsablemente, no diligenció los emplazamientos en el caso para evitar que ante la falta de interés demostrada por su cliente, el Sr. Carrasquillo, la demandada tuviese que incurrir en gastos legales innecesarios.

Cuando finalmente el Lcdo. Pinto se convenció de que era imposible continuar con el caso ya que su cliente no lo contactó durante los dos (2) años siguientes a la radicación de la demanda, intentó lograr el archivo sin perjuicio de la demanda. Lamentablemente, para ese entonces ya el foro de instancia había tomado la determinación de ordenar el archivo con perjuicio de la acción. Acción que, como cuestión de derecho, fue incorrecta, ya que, al no haber alegaciones por parte del demandado, lo que procedía era el archivo sin perjuicio, de la demanda presentada por el Lcdo. Pinto, de acuerdo con la Regla 39.1 (a)(1) de Procedimiento Civil, 32 L.P.R.A. Ap. III.[10]

Puede que la mayoría no esté del todo de acuerdo con la estrategia seguida por el Lcdo. Pinto, pero ello no justifica ni puede compararse con una violación a la ética profesional por parte del letrado. En nuestro criterio, éste cumplió con su deber de "**llevar a cabo su gestión profesional con el mas alto grado de diligencia y competencia posible**." In re: Pagán Hernández, supra, pág. 118-119. (Énfasis suplido).

Por otra parte, entiende la mayoría que el Lcdo. Pinto debió acreditar las gestiones hechas para localizar a su cliente, y solicitar luego la

---

[10] Esta regla dispone en lo pertinente que "un demandante podrá desistir de un pleito sin orden del tribunal, (1) mediante la presentación de una aviso de desistimiento en cualquier fecha antes de la notificación por la parte adversa de la contestación u de una moción solicitando sentencia sumaria... A menos que el aviso de desistimiento o estipulación expusiere lo contrario, **el desistimiento será sin perjuicio**... De acuerdo con esta regla, el tribunal erró al decretar el archivo con perjuicio de la acción, ya que el demandado no había hecho alegación respondiente, razón por la cual lo que procedía en derecho era el archivo sin perjuicio de la acción, según lo solicitó el Lcdo. Pinto.

correspondiente autorización para renunciar a su representación legal. Cabe preguntarse: ¿a dónde iba a enviar el Lcdo. Pinto notificación al Sr. Carrasquillo de su intención de renunciar a representarlo legalmente? ¿A través de qué medios iba a informárselo? ¿Cómo iba a conseguir el Lcdo. Pinto que el tribunal le relevase de la representación legal del Sr. Carrasquillo, cuando no tenía forma de acreditar el cumplimiento de los deberes que los propios cánones de ética y nuestra jurisprudencia exigen para que un abogado pueda válidamente renunciar a la representación de un cliente? No solamente el Lcdo. Pinto no tenía forma de renunciar a la representación legal de su cliente de la manera en que lo exigen los cánones de ética judicial, sino que dicho proceder en nada beneficiaba al cliente, sino más bien, perjudicaba irremediablemente su causa de acción.

En estas circunstancias, consideramos que el Lcdo. Pinto actuó de la manera que entendió más adecuada para proteger los intereses del cliente, tratando de mantener vigente la causa de acción. Al no conseguir contacto contacto con el Sr. Carrasquillo, el letrado siguió un trámite correcto: solicitar el archivo sin perjuicio de la demanda. No podemos encontrar nada que sea reprobable en este proceder.

III

En razón de lo antes expuesto, no podemos coincidir con el criterio mayoritario. Consideramos que el Lcdo. Pinto no incurrió en violación ética alguna, por lo que procederíamos a archivar la querella presentada contra el letrado, sin ningún apercibimiento o amonestación.

Por último, quisiéramos señalar que el tipo de queja presentada en este caso no debe ser fomentada por los foros disciplinarios, y mucho menos por este Tribunal. Al proveer a las personas que han contratado los servicios de un abogado un mecanismo para que puedan reparar los agravios que hayan

sufrido por causa de la conducta impropia del profesional legal en el cual depositaron toda su confianza, lo hacemos precisamente para evitar, en la medida de lo posible, que un cliente inocente y confiado sea víctima de la incompetencia, desidia, o falta de profesionalismo u honradez de su abogado.

No obstante, los foros disciplinarios no son medios para que los clientes abusivos e irresponsables, que no cooperan en lo más mínimo con su representante legal, consigan de éstos lo que no pudieron conseguir en el foro judicial, por razón de su propia falta de interés y de su irresponsabilidad. Esto es precisamente lo ocurrido aquí: un cliente contrató los servicios de un abogado, se marchó sino dejar rastro y sin saber siquiera si se había presentado o no la demanda, para luego regresar más de dos (2) años después a pedir cuentas al abogado sobre el resultado de los procedimientos. Todo esto a pesar de constarle que sin su testimonio y presencia el abogado no podía seguir adelante con el caso.

En estas circunstancias, entendemos que una vez se tramitó la querella y el Comisionado Especial pudo constatar tanto la desidia y desinterés de este cliente, como que el Lcdo. Pinto no obtuvo dinero alguno por parte de éste o de la demandada, que ésta última no tuvo que incurrir en gasto legal alguno con relación a la demanda, y que el querellado actuó con diligencia protegiendo en todo momento los mejores intereses de su cliente, el querellante, lo que procede es decretar el archivo de esta querella sin ulterior trámite.


Miriam Naveira de Rodón
Juez Asociada