EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br> José Luis Rivera Nazario | 2015 TSPR 109 <br><br> 193 DPR ____ |

Número del Caso: CP-2013-20

Fecha: 5 de agosto de 2015

Abogados de la parte querellada:

>       Lcdo. Félix O. Rivera Borges
>       Lcdo. José M. Toro Iturrino

Oficina de la Procuradora General:

>       Lcda. Karla Pacheco Álvarez
>       Subprocuradora General
>
>       Lcda. Gisela Rivera Matos
>       Procuradora General Auxiliar

Comisionado Especial:

>       Hon. Rafael A. Flores Díaz

Materia: Conducta Profesional – Censura enérgica por violación a los Cánones 18, 19, 20 y 38 de Ética Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re | Núm.: CP-2013-0020 | *Conducta Profesional* |
|---|---|---|
| **JOSÉ LUIS RIVERA NAZARIO** | | |

**PER CURIAM**

En San Juan, Puerto Rico, a 5 de agosto de 2015.

En esta ocasión evaluamos la conducta de un abogado a quien se le imputó haber infringido los Cánones 18, 19, 20 y 38 del Código de Ética Profesional (Código de Ética Profesional), 4 LPRA Ap. IX, Cs. 18, 19, 20 y 38 (2012), durante el trámite de apelación ante un foro administrativo. A tenor con los fundamentos que expondremos a continuación, censuramos enérgicamente la actuación del letrado y le apercibimos que de incurrir en nueva conducta antiética, se expone a sanciones disciplinarias más severas.

**I**

**A. Trámite Disciplinario**

El Lcdo. José Luis Rivera Nazario (licenciado Rivera Nazario o Querellado) fue admitido a la práctica de la

abogacía el **4 de enero de 1994** e ingresó al ejercicio del notariado el **23 de marzo** de ese mismo año.[1] El **31 de enero de 2012** el Sr. Reinaldo Cintrón Mercado (señor Cintrón o Querellante), presentó una Queja contra el licenciado Rivera Nazario mediante la cual alegó que, producto de la incompetencia profesional del Querellado, se produjo la pérdida de su causa de acción, su empleo y su derecho a la revisión de una determinación administrativa. En atención a lo anterior, el **15 de marzo de 2012** el licenciado Rivera Nazario compareció ofreciendo su versión de los hechos.

Remitimos los escritos a la consideración de la Oficina de la Procuradora General (Procuradora), para investigación e informe y, eventualmente, la instruimos a que presentara la Querella correspondiente en contra del letrado. De conformidad a lo anterior, el **15 de agosto de 2013** la Procuradora presentó la Querella imputándole al licenciado Rivera Nazario infracciones a los Cánones 18, 19, 20 y 38 del Código de Ética Profesional. Éste formuló su Contestación a la Querella el **11 de octubre de 2013**.[2]

---

[1] El **5 de septiembre de 2014** emitimos Resolución autorizando la baja voluntaria del Lcdo. José Luis Rivera Nazario (licenciado Rivera Nazario) del ejercicio de la notaría.

[2] En su contestación el licenciado Rivera Nazario manifestó que al presente está residiendo en el estado de la Florida y que no está ejerciendo la profesión. Expresó, además, haber renunciado en todos los casos y entregado los expedientes a sus clientes. Finalmente, indicó que se encuentra a la espera de la resolución de este proceso disciplinario para solicitar la baja voluntaria del ejercicio de la abogacía.

Mediante Resolución de **27 de marzo de 2014** nombramos al Hon. Rafael A. Flores Díaz, Comisionado Especial, a quien delegamos la encomienda de recibir prueba y elaborar un informe con las determinaciones de hechos, así como las recomendaciones pertinentes. La Procuradora compareció el **4 de junio de 2014** ante este Tribunal alertándonos de que el señor Cintrón había incoado un pleito civil sobre Incumplimiento de Contrato, Daños y Perjuicios en contra del letrado, basado en los mismos hechos que originaron la Querella.[3] No obstante, reiteró que continuaría con el proceso disciplinario contra el licenciado Rivera Nazario.

Tras varios incidentes procesales, el **17 de septiembre de 2014** se celebró la vista en su fondo en contra del Querellado. Las partes señalaron al Comisionado haber estipulado todo el expediente, incluyendo los documentos relacionados al caso administrativo que originó el asunto ético, los escritos presentados por la Procuradora y por el licenciado Rivera Nazario, así como las cuestiones ventiladas ante el Comisionado.

Durante el proceso, el Querellado reconoció que sus actuaciones fueron contrarias a los postulados éticos imputados y se allanó a la sanción que este Foro tuviera a bien imponer en su día. No obstante, solicitó que

---

[3] El Querellante presentó la Demanda el **8 de marzo de 2013** en el Tribunal de Primera Instancia, Sala Superior de Mayagüez (Caso Núm. ISCI201300327). Tomamos conocimiento judicial de que el **22 de enero de 2015** el foro de instancia dictó Sentencia desestimando la causa de acción, debido a que el señor Cintrón no demostró nexo causal entre los daños alegados y el incumplimiento del licenciado Rivera Nazario.

ponderáramos la extensa prueba testifical sobre sus capacidades, competencia y reputación profesional.

**B. Trasfondo Fáctico**

### i. Trámite ante la Unidad de Disciplina de la Administración de Corrección

El **23 de septiembre de 2002** el Querellante solicitó la asistencia legal del licenciado Rivera Nazario para que lo representara en un proceso administrativo informal de suspensión sumaria y destitución, ante la Unidad de Disciplina de la Administración de Corrección (AC o Agencia), por alegadas infracciones a disposiciones legales y reglamentarias de ese organismo. Hasta ese entonces, el señor Cintrón ocupaba un puesto de carrera como Oficial Correccional I en el Complejo Correccional Ponce Mínima, en Ponce. Las partes suscribieron un contrato de servicios profesionales en el que pactaron honorarios por $500.00, de los cuales el señor Cintrón anticipó $100.00.

El licenciado Rivera Nazario compareció ante la Unidad de Disciplina de la Agencia, a los efectos de anunciar formalmente que había asumido la representación legal del señor Cintrón y solicitar la transferencia de una vista pautada para el **13 de noviembre de 2003**, debido a que tenía dos señalamientos judiciales previos que impedían su asistencia. En los escritos presentados ante este Foro, indicó que el Querellante estaba al tanto de

dicha situación.  La Agencia recalendarizó la audiencia inicial para el **18 de marzo de 2004.**  Sin embargo, el licenciado Rivera Nazario no recibió la notificación de este nuevo señalamiento, ya que la Unidad de Disciplina de la AC le notificó directamente al Querellante.  Éste no le informó al Querellado sobre la nueva fecha y asistió a la vista por derecho propio.

Efectivo el **18 de noviembre de 2004** el señor Cintrón fue destituido permanentemente de su cargo en la Agencia. Si bien el licenciado Rivera Nazario había comparecido por escrito como su representante, la resolución final del organismo gubernamental tampoco le fue notificada, pues solamente se le notificó al señor Cintrón.

### ii. Trámite ante la Comisión de Investigación, Procesamiento y Apelación (CIPA)

El **22 de noviembre de 2004** el señor Cintrón acudió, nuevamente, a la oficina del Querellado para que le asistiera en la revisión de la determinación administrativa que confirmó la separación permanente de su empleo en la AC.  En ese momento hizo un pago de $100.00 para acreditarse a los honorarios de abogado, sin embargo, en esa ocasión no confeccionaron un contrato de representación legal por escrito que recogiera ese incidente.

Luego de haber examinado la Resolución del caso, el licenciado Rivera Nazario le explicó al Querellante que, a base de la evidencia que surgía del expediente

administrativo, la Agencia podía destituirlo. Le indicó, además, que las imputaciones en su contra quedaron consignadas y probadas en el récord administrativo por éste no haberlas controvertido. En específico, el hecho de que hizo alegación de culpabilidad en un proceso penal en su contra por maltratar a su hijo menor de edad.[4] No obstante, debido a que el señor Cintrón insistió en negar los hechos que originaron su despido, es decir la alegación de culpabilidad en el proceso criminal, el Querellado le requirió la documentación pertinente para elaborar la apelación del caso. A pesar de que el Querellante no regresó a su despacho, ni produjo la información y documentos solicitados, el **20 de diciembre de 2004** el licenciado Rivera Nazario apeló la Resolución Final de la Agencia ante la CIPA (Núm. 04-AC-198), para de esta manera salvaguardar los derechos de su cliente.[5]

---

[4]    En la carta de destitución se consignó que el ex empleado no refutó el hecho de haber agredido físicamente a su hijo menor de edad. De la investigación realizada por la Administración de Corrección (AC o Agencia) se desprende que el **12 de agosto de 2001** el señor Cintrón agredió en las manos y en diferentes partes del cuerpo a su hijo de 12 años. Como consecuencia de los golpes, el niño requirió asistencia médica y tuvo que ser atendido en el Hospital Bella Vista de Yauco. Por estos hechos, el Querellante hizo alegación de culpabilidad y el 1 de marzo de 2002 el Tribunal de Primera Instancia, Sala Superior de Ponce, le concedió los beneficios de una sentencia suspendida por infracción al Artículo 52 de la derogada Ley Núm. 342-1999, conocida como la *Ley para el Amparo a Menores en el Siglo XXI*, 8 LPRA sec. 443q (2001) (Derogada). Finalmente, completó un Programa de Desvío, razón por la que el foro de instancia el 5 de septiembre de 2003 lo exoneró y ordenó el archivo y sobreseimiento del caso. Contestación a la Queja, anejos 8 y 11.

[5]    En el expediente constan dos cartas que el Querellado adujo haber dirigido por correo ordinario al Querellante solicitando su cooperación y apercibiéndole de las consecuencias de su inacción. Contestación a la Querella, anejos 15-16.

Según se desprende del expediente Núm. 04-AC-198,**6** la CIPA emitió una Orden, notificada el **12 de enero de 2005,** mediante la cual requirió a las partes cierta documentación en un término de 20 días.**7** Ante la inacción de ambas partes, el **23 de febrero de 2005** la CIPA dictó una segunda Orden en la que instó al cumplimiento de lo requerido anteriormente en el término de 20 días, so pena de sanciones económicas. El **4 de marzo de 2005** la AC compareció ante el organismo apelativo dando cumplimiento a la Orden y solicitando la desestimación del caso por falta de jurisdicción. Así las cosas, el **8 de marzo de 2005** la CIPA concedió un término de diez días al señor Cintrón para que expusiera su posición respecto a la solicitud de desestimación de la Agencia. El **4 de abril de 2005** la CIPA otorgó al Querellante un plazo final de veinte días para que diese cumplimiento a la Orden emitida el **8 de marzo** del mismo año. Ante ello, la AC presentó una segunda solicitud de desestimación el **7 de abril de 2005.** Debido a la inercia e incumplimiento del licenciado Rivera Nazario con los requerimientos de la CIPA, el foro concernido dictó Resolución el **21 de abril de 2005**

---

**6**     Copia del expediente de Apelación ante la CIPA fue elevado ante el Comisionado.

**7**     La CIPA requirió al señor Cintrón someter copia de la Resolución Final y de la Resolución de los Cargos, mientras que exigió a la AC copia de la Notificación Personal de la Resolución Final hecha al Querellante.

decretando la desestimación de la apelación "*ante la dejadez y falta de interés*" del señor Cintrón.[8]

De tal dictamen, el licenciado Rivera Nazario no solicitó reconsideración, ni presentó revisión administrativa ante el Tribunal de Apelaciones. Por lo tanto, la determinación de la CIPA advino final y firme.

Conforme alegó el señor Cintrón, el Querellado no le informó de la Resolución emitida en su caso. Esta negligencia, según planteó, le imposibilitó conseguir el consejo de otro abogado, así como cuestionar, oportunamente, la decisión administrativa en su contra.

Según el Querellado, la desestimación del caso apelado fue resultado de la falta de cooperación y comunicación del señor Cintrón. Adujo que no fue hasta el 2010 que el Querellante regresó a su oficina, nuevamente, insistiendo en que se efectuara algún trámite para reabrir su caso. Así las cosas, el Querellado interpuso, sin éxito, un nuevo escrito de Apelación ante la CIPA cuestionando aspectos procesales de la determinación del 2004. No obstante, dicha apelación fue desestimada por falta de jurisdicción. En vista de lo anterior, el **18 de marzo de 2011** el licenciado Rivera Nazario le cursó una carta al Querellante en la que, además de informarle de la resolución administrativa, le expuso que entendía que el recurso no hubiese procedido

---

[8]     Contestación a Queja, Anejo 9.

por el hecho de haberse declarado culpable en el proceso penal concernido. Posteriormente, el letrado recurrió al tribunal apelativo intermedio, el cual desestimó la petición por los mismos fundamentos del foro administrativo. Por último, acudió ante este Tribunal mediante la Solicitud de *Certiorari* Núm. CC-2011-0456, la cual declaramos *No Ha Lugar* el 14 de octubre de 2011.[9]

## II

El Código de Ética Profesional establece las normas mínimas de conducta que deben dirigir la práctica de la profesión legal. In re Cotto Luna, 187 DPR 584 (2012). Aquellos que ostentan el privilegio de ser admitidos a este Foro, tienen la obligación de actuar siempre de acuerdo a los más altos principios éticos. In re Mulero Fernández, 174 DPR 18 (2008). Los Cánones del Código de Ética Profesional, pretenden que cada jurista exhiba un desempeño, personal y profesional, que enaltezca y refleje los estándares morales de la abogacía, en beneficio del cliente, la profesión en general, la sociedad y sus instituciones de justicia. Íd. Todo abogado que comparezca ante las agencias administrativas, asume el deber de observar los mismos principios éticos que requiere su conducta ante los foros judiciales. In re Pietri Castellón, 185 DPR 982 (2012).

---

[9] Según expresara el Querellado, por estas gestiones llevadas a cabo con el consentimiento del señor Cintrón, él no recibió pago por sus honorarios, ni por las costas.

**A. Canon 18: Competencia del Abogado y Consejo al Cliente**

El abogado posee la responsabilidad ineludible de defender los derechos e intereses de sus clientes con **diligencia, competencia y gran responsabilidad,** según preceptuado en el Canon 18 del Código de Ética Profesional.  4 LPRA Ap. IX, C. 18 (2012) (Canon 18). Véase, además, In re Cotto Luna, *supra*.  De hecho, cuando un abogado acepta la encomienda de representar a una persona y no la ejecuta **adecuada y responsablemente,** incumple el Canon 18.  "La representación legal adecuada requiere que se ejerza la profesión con **celo, cuidado y prudencia".**  (Énfasis suplido).  Íd., pág. 589.

Al asumir un caso, el abogado se obliga a realizar todas las gestiones posibles, dentro del marco de la ética, en beneficio de su cliente.  In re Cuevas Borrero, 185 DPR 189 (2012).  En el ejercicio de la abogacía no hay espacio para que sus miembros actúen con **displicencia, dejadez y desidia** en la tramitación de los asuntos que le han sido delegados.  In re Díaz Nieves *et als.*, 189 DPR 1000 (2013); In re Cuevas Borrero, *supra*.  Por lo tanto, este deber de diligencia profesional genera una obligación dual frente a su cliente, así como frente a los tribunales en la administración de la justicia.  In re Hoffman Mouriño, 170 DPR 968 (2007).

Cónsono a lo anterior, hemos destacado que un abogado contraviene el Canon 18 cuando exhibe una conducta negligente que **pueda acarrear o, en efecto acarree, la**

**desestimación de un caso o la pérdida de la causa de acción** de su representado. In re Pietri Torres, 2014 TSPR 99, 191 DPR ___ (2014); In re Díaz Nieves *et als.*, *supra*; In re Cuevas Borrero, *supra*. También, vulnera el precepto en cuestión al: 1) no responder planteamientos fundamentales; 2) **ignorar órdenes judiciales o administrativas**; 3) incurrir en errores crasos; y 4) **desatender o abandonar el trámite de un caso**, entre otras. In re Díaz Nieves *et als.*, *supra*. Véase, además, In re Nieves Nieves, 181 DPR 25 (2011).

Cuando un abogado pierde contacto con su cliente y están por vencerse los términos para presentar una causa de acción, su responsabilidad ética en estas circunstancias está sujeta al grado de diligencia que despliegue para contactar a su representado. In re Pinto Andino, 156 DPR 259 (2002). Esto significa que el abogado deberá efectuar esfuerzos razonables y diligentes dirigidos a restablecer la comunicación con su cliente y advertirle de la situación procesal del asunto encomendado. Íd. "[L]o que constituye un esfuerzo 'razonable y diligente' para localizar al cliente dependerá de [un análisis sobre] la totalidad de las circunstancias del caso." (Citas omitidas). Íd., pág. 265.[10]

---

[10]    Aunque hemos expresado que, en ocasiones, será suficiente y razonable una carta, un mensaje de correo electrónico, por medio de personas allegadas e incluso una llamada telefónica, no siempre lo será. In re Pinto Andino, 156 DPR 259, 264-265 (2002).

Un abogado diligente que realice esfuerzos razonables para localizar o comunicarse con su cliente, de ordinario no está éticamente obligado a presentar la acción encargada para preservarle los derechos. In re Pinto Andino, *supra*. Pero, si en tal circunstancia el abogado decide presentar la acción o el recurso a fin de evitar que su representado, por ejemplo, pierda su derecho a apelar, ello no constituye una violación ética. No obstante, una vez presentada la acción, si las nuevas gestiones para contactar al cliente resultan infructuosas, el abogado deberá solicitarle al foro con jurisdicción la autorización para renunciar. Lo importante es que el abogado descargue su responsabilidad ética informando la problemática al foro con jurisdicción, proveyendo detalles que acrediten las gestiones al respecto. Corresponde entonces a la autoridad judicial o administrativa ponderar la suficiencia de dichos esfuerzos. No es correcto que el abogado interponga la acción correspondiente y luego se desligue del trámite del caso, comprometiendo de esta manera los derechos que intentó proteger y entorpezca la administración de la justicia. Íd.

**B. Canon 19: Información al Cliente**

A fin de representar los intereses de su cliente de forma diligente y responsable, es indispensable que el abogado lo **mantenga informado de los asuntos importantes** que surjan durante el trámite del caso encomendado, según

dispone el Canon 19 del Código de Ética Profesional. 4 LPRA Ap. IX, C. 19 (2012) (Canon 19); In re Arroyo Ramos, 159 DPR 284 (2003). Por consiguiente, esta obligación es autónoma e independiente de su deber de diligencia. In re Pietri Castellón, *supra*. "El deber de comunicación efectiva es imprescindible en la relación fiduciaria que caracteriza el vínculo abogado-cliente". Íd., pág. 992. A fin de lograr una comunicación efectiva entre ambos, el abogado debe informar directamente a su representado de los trámites realizados y su desarrollo, consultarle los aspectos que estén fuera del ámbito discrecional de la representación legal y acatar sus directrices, siempre y cuando estén dentro del marco ético. In re Cuevas Borrero, *supra*; In re Mulero Fernández, *supra*.

En lo pertinente, un miembro de la profesión desacata este imperativo ético cuando mantiene ajeno a su cliente sobre el resultado adverso de un asunto encomendado —la acción se archiva o se desestima— o no mantiene al cliente al tanto del tracto procesal del caso. In re Cuevas Borrero, *supra*; In re Montes Fuentes, 174 DPR 863 (2008). De hecho, no informar al cliente sobre su caso, no solo constituye una infracción al Canon 19, sino que perjudica el proceso de impartir justicia. In re Reyes Coreano, 190 DPR 739 (2014).

Es importante reiterar que el Canon 19 representa una obligación **unidireccional**: "impone el deber de comunicación al **abogado** y no al cliente". (Énfasis en el

original).  In re Nieves Nieves, *supra*, pág. 40.  No es excusa para el abogado el dejar de proveer datos sobre los asuntos importantes del caso porque el cliente se haya tornado inaccesible.  Es imperativo que demuestre las diligencias razonables realizadas a fin de restablecer la comunicación con éste.  Íd.

**C. Canon 20: Renuncia de Representación Legal**

Como parte de los deberes del abogado para con su cliente, el Canon 20 del Código de Ética Profesional dicta el procedimiento a seguir para ser relevado de la representación profesional.  4 LPRA Ap. IX, C. 20 (2012) (Canon 20).  En lo pertinente, dispone que "[c]uando un cliente es negligente y no coopera con su abogado en la tramitación de su caso, el abogado debe renunciar [a] la representación legal existente. **No renunciar impide al letrado representar adecuadamente a su cliente y constituye un error de juicio y una violación al Canon 20** […]".  (Citas omitidas y énfasis suplido).  In re Ramos Hernández, 183 DPR 647, 655 (2011).  Véase, además, In re Díaz Nieves *et als.*, *supra*.  En este contexto, la renuncia del abogado está sujeta a que obtenga el permiso del foro pertinente y a que tome las medidas razonables para evitarle perjuicio a su representado.  In re Ramos Hernández, *supra*.

**D. Canon 38: Preservación del Honor y la Dignidad de la Profesión**

Según dispone el Canon 38 del Código de Ética Profesional, corresponde a cada miembro de la abogacía conducirse en la esfera privada, así como en la profesional, de manera que exalte el honor y la dignidad de la profesión legal. 4 LPRA Ap. IX, C. 38 (2012) (Canon 38). Asimismo, debe evitar hasta la apariencia de conducta impropia. Íd. La conducta de los abogados admitidos a practicar la profesión se mide con unos parámetros muy distintos a los de un individuo particular. In re Sierra Arce, 2014 TSPR 142, 192 DPR ___ (2014). La clase togada debe tomar conciencia de que la confianza pública de las instituciones de justicia y de la profesión misma, descansa, en gran parte, en su proceder.

La responsabilidad ética inherente a nuestra profesión, impone al abogado un deber de revisión continua de su comportamiento. In re Nieves Nieves, *supra*. "[H]emos señalado enfáticamente que 'por ser los abogados el espejo donde se refleja la imagen de la profesión éstos deben actuar con el más escrupuloso sentido de responsabilidad que impone la función social que ejercen' ". (Citas omitidas). In re Guemárez Santiago, 2014 TSPR 112, 191 DPR __ (2014), pág. 10, citando a In re Santiago Ríos, 172 DPR 802, 822 (2007). Véase, además, In re Cuyar Fernández, 163 DPR 113 (2004). Las actuaciones de los abogados como funcionarios de este Tribunal y ministros

del sistema de justicia deben estar encaminadas a preservar un orden jurídico íntegro y eficaz. In re Cuyar Fernández, *supra*.

**E. Comisionado Especial**

Reiteradamente hemos pautado que las determinaciones de hechos del Comisionado Especial basadas en prueba testifical gozan de nuestra deferencia, salvo se demuestre que actuó con pasión, prejuicio, parcialidad o error manifiesto en la apreciación de la prueba. In re Sierra Arce, *supra*; In re Cuevas Borrero, *supra*. No obstante, cuando sus determinaciones descansan en prueba documental, este Tribunal está en la misma posición que el Comisionado Especial de evaluarla. Íd. Por lo tanto, podemos realizar un examen independiente de este tipo de prueba y aceptar, modificar y hasta rechazar su informe. In re Cuevas Borrero, *supra*.

**F. Sanción Disciplinaria**

Al momento de fijar la sanción a imponerse a un abogado que ha infringido el Código de Ética Profesional, ponderamos los siguientes factores: 1) la reputación del abogado en la comunidad; 2) su historial previo; 3) si constituye su primera falta y si no ha causado perjuicio a alguna parte; 4) la aceptación y arrepentimiento sincero por las imputaciones; 5) la defensa frívola de su conducta; 6) si se trata de una conducta aislada; 7) el

ánimo de lucro, y 8) cualquier otra consideración atenuante o agravante aplicable a los hechos. In re De León Rodríguez, 190 DPR 378 (2014); In re Cotto Luna, *supra*; In re Plaud González, 181 DPR 874 (2011).

Es importante tratar las faltas similares de modo análogo, a fin de evitar la arbitrariedad y de alcanzar una reglamentación ética coherente y uniforme. In re De León Rodríguez, *supra*. Por lo tanto, los asuntos disciplinarios semejantes merecen sanciones, también semejantes. No obstante, tenemos que reconocer que las circunstancias particulares de cada caso son únicas y determinantes al momento de imponer la sanción. Íd.

**III**

Como bien admitiera el propio licenciado Rivera Nazario y tras evaluar todo el expediente, la prueba estipulada, así como el Informe del Comisionado Especial, concluimos que éste quebrantó los Cánones 18, 19, 20 y 38 del Código de Ética Profesional.

El señor Cintrón acudió a la oficina del Querellado para que lo asistiera en el proceso de apelación ante la CIPA. Luego de la contratación de sus servicios, el abogado no logró contactarlo para que le proveyera la información que éste le había solicitado. Bajo esas circunstancias y por temor a que el Querellante perdiera su derecho a recurrir de la decisión de la Unidad de Disciplina de la AC, presentó la Apelación ante la CIPA.

Sin embargo, optó por ignorar los requerimientos del organismo apelativo, lo que provocó la desestimación del recurso por falta de interés y dejadez. Tampoco intimó la reconsideración, ni la revisión administrativa de la referida determinación.

La responsabilidad del abogado para con su cliente no cesó al momento de interponer el recurso en cuestión. El deber de corrección ética continua le exigía haber dado fiel cumplimiento al trámite y a las órdenes administrativas. En lugar de abandonar el proceso de apelación, como efectivamente hizo, el licenciado Rivera Nazario debió haber planteado ante la CIPA la problemática que afrontaba con el Querellante. Es decir, ante la falta de colaboración de su cliente, el Querellado venía obligado a informarle al foro administrativo que había perdido contacto con éste, razón que le impedía dar cumplimiento a la Orden requiriendo documentos. Debió acreditarle, además, los esfuerzos razonables realizados conducentes a restablecer la comunicación con el señor Cintrón.[11] Solo así habría velado, **responsable y diligentemente** por los intereses de su representado conforme al Canon 18 del Código de Ética Profesional. De lo contrario, si no estaba en condiciones de tramitar el asunto encomendado de forma capaz y diligente no debió iniciar el proceso. S. Steidel Figueroa, <u>Ética y</u>

---

[11]    En términos de las gestiones realizadas, véase el escolio número 5.

Responsabilidad Disciplinaria del Abogado, San Juan, Publicaciones JTS, 2010, pág. 184. Sin duda, la conducta del licenciado Rivera Nazario, independientemente de los méritos de la acción, perjudicó el derecho para apelar del Querellante.

Además, conforme al Canon 20 es deber del abogado renunciar cuando se enfrenta a un cliente negligente y que no colabora en la gestión de su causa. Por tanto, una vez presentada la acción, el Querellado no podía cruzarse de brazos ante la conducta displicente del Querellante. En este contexto, no solicitar la oportuna renuncia ante el foro apelativo en cuestión constituyó un error de juicio que limitó la adecuada representación de su cliente. Ello conllevó consecuencias adversas al caso del señor Cintrón, proscritas por el Código de Ética Profesional.

El licenciado Rivera Nazario también infringió lo dispuesto en el Canon 19, antes reseñado. En el expediente consta una carta del 12 de mayo de 2005 enviada por correo ordinario en la que el abogado pretendió explicar a su cliente el resultado de la apelación. Sin embargo, el señor Cintrón negó haber recibido la misma. Por consiguiente, esta gestión no resultó suficiente dada la importancia que representaba el asunto dentro del trámite del caso. No se desprende del expediente ninguna otra gestión de comunicación tales como llamadas, cartas con acuse de recibo, correos electrónicos, mensajes a través de intermediarios, entre otras, que demostraran el

interés del Querellado de informar a su cliente. Tampoco constan esfuerzos dirigidos a corroborar la corrección de la dirección. El no informar a su representado sobre el desenlace de la apelación impidió, incluso, que éste pudiera solicitar la reconsideración, cuestionarla ante un foro de superior jerarquía o hasta contar con el asesoramiento de otro abogado que le orientara sobre el curso de acción más apropiado. Este deber de informar al cliente, insistimos, es unidireccional y competía al abogado contratado demostrar las gestiones razonables realizadas dirigidas a descargar su responsabilidad.

Con su proceder, el Querellado no cumplió con su responsabilidad de exaltar el honor y la dignidad de la profesión a la que pertenece. Su conducta perjudicó la imagen y confianza del cliente hacia la práctica de la abogacía. Pero, además, como representante de la institución de la justicia afectó su buen nombre.

Finalmente, nos resta pasar a examinar los factores atenuantes y/o agravantes que inciden en la sanción a imponer. El licenciado Rivera Nazario lleva poco más de veintiún años ejerciendo la abogacía y la notaría en la Isla. No se desprende de su expediente queja o querella previa que cuestione su desempeño profesional en ambas áreas del Derecho. De la conducta desplegada ante este Tribunal surge que el Querellado es un profesional responsable y respetuoso. En cada una de sus comparecencias ante este Foro, lo hizo con humildad, y,

finalmente, reconociendo sus faltas éticas y expresando su arrepentimiento.

El licenciado Rivera Nazario, además, goza de buena reputación profesional entre sus pares y en la comunidad en que sirve. Es importante señalar que el Querellante, aunque sin éxito, tuvo la oportunidad de ventilar ante un foro judicial pertinente la acción de daños por impericia profesional. Por último, aunque la falta de diligencia del abogado ocasionó la desestimación de la causa de su cliente, reconocemos, a su vez, que la conducta del señor Cintrón —sin duda alguna— contribuyó al resultado adverso en su apelación. Su falta de cooperación, negligencia y dejadez en la gestión del caso aportó a que perdiera toda causa de acción.

**IV**

Tomando en consideración los hechos y el Derecho antes expuestos, **censuramos enérgicamente al licenciado Rivera Nazario por infringir los Cánones 18, 19, 20 y 38 del Código de Ética Profesional.**[12] Le apercibimos que de

---

[12] De un estudio de la jurisprudencia, encontramos que: 1) por incumplir el Canon 18, **amonestamos** a un abogado que interpuso un recurso de revisión administrativa ante el Tribunal de Apelaciones, tardíamente, por lo que fue desestimado, en In re Pietri Torres, 2014 TSPR 99, 191 DPR ___ (2014); 2) **amonestamos** a una de las abogadas disciplinadas en el caso, por presentar un recurso apelativo pasado el término jurisdiccional en In re Díaz Nieves et als., 189 DPR 1000 (2013); **censuramos enérgicamente** a un letrado por faltar a los Cánones 12, 18 y 19, ya que su falta de diligencia ocasionó el archivo de un caso sin perjuicio en In re Hernández González, 188 DPR 721 (2013); **censuramos enérgicamente** a un abogado que infringió los Cánones 18 y 38 al presentar una apelación ante la CIPA fuera del término jurisdiccional en In re Cotto Luna, 187 DPR 584 (2012); **censuramos enérgicamente** al licenciado Pietri Castellón por faltar a los Cánones 6, 12, 18 y 19, al no mantener a su representada informada e incumplir varias órdenes de un organismo administrativo, ocasionando la desestimación de lo encomendado, en In re Pietri Castellón, 185 DPR 982 (2012); y **censuramos enérgicamente** a la licenciada Mulero por faltar a los Cánones 18 y 19, al desatender una

incurrir en conducta antiética ulterior, se expone a sanciones disciplinarias más severas.

Se dictará Sentencia de conformidad.

---

encomienda provocando que la cliente perdiera su causa de acción en <u>In re Mulero Fernández</u>, 174 DPR 18 (2008).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| *IN RE*<br><br>**JOSÉ LUIS RIVERA NAZARIO** | **NÚM.: CP-2013-0020** | **SOBRE:**<br><br>**CONDUCTA PROFESIONAL** |

**SENTENCIA**

En San Juan, Puerto Rico, a 5 de agosto de 2015.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte íntegra de la presente Sentencia, y tomando en consideración que es la primera queja que se presenta contra el Lcdo. José Luis Rivera Nazario, quien cuenta con un historial intachable en veintiún años de trayectoria ejerciendo la abogacía, le censuramos enérgicamente por infringir los Cánones 18, 19, 20 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX, Cs. 18, 19, 20 y 38 (2012). Además, le apercibimos que de incurrir en conducta antiética ulterior, se expone a sanciones disciplinarias más severas.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo