EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:<br><br><br>Juan C. Rodríguez López | 2016 TSPR 177<br><br>196 DPR _____ |

Número del Caso: CP-2013-24

Fecha: 4 de agosto de 2016

Abogado del querellado:

      Lcdo. Pedro Malavet Vega

Oficina de la Procuradora General:

      Lcda. Karla Pacheco Álvarez
      Subprocuradora General

      Lcda. Minnie H. Rodriguez López
      Procuradora General Auxiliar

Comisionada Especial:

      Hon. Crisanta González Seda

Materia: Conducta Profesional – Censura enérgica por infrigir los Cánones 18 y 19 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 18, C. 19.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In Re:

Juan C. Rodríguez López          CP-2013-24

*PER CURIAM*

En San Juan, Puerto Rico, a 4 de agosto de 2016.

I

El Lcdo. Juan C. Rodríguez López (licenciado Rodríguez López o querellado) fue admitido al ejercicio de la abogacía el 26 de enero de 1999 y prestó juramento como notario el 23 de febrero de 2000. El 30 de noviembre de 2011, el Sr. Julio Martínez Madera (señor Martínez Madera o quejoso) presentó una queja contra el querellado. Los hechos que dieron inicio a esta acción disciplinaria son los siguientes.

El 8 de junio de 2009, el señor Martínez Madera

sufrió una caída en el Municipio de Salinas.[1] Posteriormente, comenzó a sentir un dolor que atribuyó al accidente[2] y acudió al Municipio de Salinas para obtener información sobre algún seguro que le ofreciera cubierta. Allí le indicaron que buscara representación legal para hacer la reclamación correspondiente. En vista de lo anterior, en el mes de abril del 2010 el quejoso se reunió con el Lcdo. Juan Oscar Rodríguez López, hermano del querellado. Éste le requirió una copia de los récords médicos y fotos del área del accidente. No se suscribió un contrato, ni acordaron alguna cantidad o por ciento de honorarios.

Luego de esa primera reunión, el caso se le asignó al querellado, quien citó al quejoso a una entrevista. En ésta, le explicó al señor Martínez Madera que tenía disponible dos cursos de acción, ya que todavía restaban dos meses para que prescribiera la acción. Según la orientación brindada, el querellado podía hacer una reclamación extrajudicial a la Compañía de Seguros que representaba al Municipio o presentar una demanda en el Tribunal de Primera Instancia.[3] El señor Martínez Madera autorizó al licenciado Rodríguez López a enviar la

---

[1] El señor Martínez Madera indicó en su queja que el accidente ocurrió el 6 de junio de 2009. Sin embargo, surge del Informe de Incidente preparado por la Policía Municipal que el evento ocurrió el 8 de junio de 2009. Informe de Incidente, *Contestación a la querella* presentada por el licenciado Rodríguez López, Anejo 2.
[2] Al parecer, en algún momento le notificó el accidente al Municipio de Salinas pero no se precisó cuándo. *Informe de la Comisionada Especial*, pág. 6.
[3] El licenciado Rodríguez López le enseñó un proyecto de demanda y le explicó el contenido de la reclamación extrajudicial.

reclamación extrajudicial. Por otro lado, el querellado le solicitó nuevamente los récords médicos y las fotos del lugar de los hechos.

Así las cosas, el 12 de mayo de 2010 el querellado envió una carta a Acosta Adjustment, Inc., compañía de ajustadores del Municipio de Salinas. En la misma, informó que representaba al quejoso, relató los hechos del caso, así como los fundamentos que sostenían una reclamación judicial y expresó que estaban "en la mejor disposición de aceptar la cantidad de $100,000 más la pérdida económica, si se comunica[ban] en los próximos 30 días y así llegar a un acuerdo extrajudicial".[4] A pesar de sugerir dicho acuerdo y concederle un término a la compañía, el querellado no dio seguimiento a la carta enviada, como tampoco se comunicó con su cliente. En consecuencia, el 6 de julio de 2010, el quejoso le envió al licenciado Rodríguez López un correo electrónico, ya que no hablaba con él desde hacía 3 meses y no sabía nada de su caso. El querellado no contestó dicho mensaje.

Posteriormente, el señor Martínez Madera continuó haciendo gestiones y descubrió que Acosta Adjustment, Inc. denegó su reclamación extrajudicial en mayo de 2010. Una vez se lo informó al querellado, este último se comunicó con la Sra. Astrid Arbona, supervisora de Acosta Adjustment, Inc. El 27 de octubre de 2010, la señora Arbona le envió una carta al querellado reiterando la

_____

[4] Reclamación extrajudicial de 12 de mayo de 2010, *Querella*, Anejo III.

denegatoria de la reclamación extrajudicial y su archivo. A su vez, anejó la carta que envió la compañía el 20 de mayo de 2010 denegando la reclamación extrajudicial porque el querellado alegó que no la recibió.

Entonces, el querellado y su hermano se reunieron con el quejoso en una fecha cercana al 27 de octubre de 2010. Le informaron que tenían que contratar a un ingeniero para establecer la negligencia del Municipio, lo cual podría tener un costo de dos mil a tres mil dólares. Le explicaron que procedía una reclamación de daños si lograban probar que el Municipio incurrió en negligencia. El quejoso les indicó que iba a hablar con un ingeniero que él conocía para que fuera su perito.

Debido a que el querellado no se comunicó con su cliente por varios meses,[5] en marzo del 2011 el señor Martínez Madera trató de obtener información de su caso por medio de Acosta Adjustment, Inc. Días después, recibió una llamada del hermano del querellado. Éste le cuestionó que se comunicara con los ajustadores y le informó que no lo iban a representar en el caso. En respuesta, el quejoso le solicitó que renunciaran al caso para él buscar otro abogado. El querellado nunca renunció formalmente a la representación legal del quejoso.

---

[5] El quejoso alegó que se comunicó con el licenciado Rodríguez López a principios del año 2011 y que éste le indicó, entre otras cosas, que mientras continuara recibiendo tratamiento médico por las consecuencias del accidente, su acción no prescribía. *Informe de la Comisionada Especial*, pág. 23.

El 17 de octubre de 2011, el señor Martínez Madera le envió una carta al querellado. Entre otras cosas, le indicó que no pudo contratar otra representación legal porque el querellado nunca renunció al caso y que unos abogados que consultó le informaron que su causa de acción estaba prescrita. Por tanto, le solicitó el pago de $100,000 dólares. Al no recibir respuesta del licenciado Rodríguez López, el señor Martínez Madera presentó la queja que dio inicio a este proceso disciplinario. Incluyó como anejos: (1) los apuntes del Lcdo. Juan Oscar Rodríguez López durante la primera entrevista; (2) el proyecto de demanda; (3) la reclamación extrajudicial de 12 de mayo de 2010; (4) el correo electrónico enviado por el quejoso al querellado el 6 de julio de 2010; (5) las cartas enviadas por Acosta Adjustment, Inc. el 20 de mayo de 2010 y el 27 de octubre de 2010, (6) y la carta que el quejoso le envió al querellado el 17 de octubre de 2011.

Por su parte, el licenciado Rodríguez López solicitó que se declarara sin lugar la queja presentada. Explicó que, luego de enviar la reclamación extrajudicial, él se comunicó con la señora Arbona porque le preocupaba no haber recibido alguna contestación. Luego de dialogar con ésta, recibió la carta de 27 de octubre de 2010 y se reunió con el quejoso. En esa reunión, el quejoso le indicó a su hermano y a él que buscaría un perito. Además, los licenciados le solicitaron nuevamente que entregara la prueba médica y las fotos del área, lo cual alegó que

nunca entregó. Señaló que después de esa reunión, que se realizó cerca del 27 de octubre de 2010, no se comunicó con el quejoso hasta que recibió su carta de 17 de octubre de 2011. Por otro lado, indicó que son incorrectas las alegaciones del señor Martínez Madera en cuanto a que se trató de comunicar con él en varias ocasiones, ya que sólo envió dos comunicaciones: el correo electrónico de 6 de julio de 2010 y la carta de 17 de octubre de 2011. Incluyó como anejos los mismos documentos que el quejoso y una declaración jurada de su hermano, el Lcdo. Juan Oscar Rodríguez López.

El 5 de junio de 2012 la Procuradora General rindió un informe. Determinó que hubo una contratación entre el quejoso y el querellado, pero que existían divergencias entre ellos que dependían de una adjudicación de credibilidad. En particular, sostuvo que se debía dilucidar cuáles fueron los acuerdos suscritos y si la comunicación entre ellos fue deficiente. A base de lo anterior, recomendó el archivo de la queja porque del expediente no surgía prueba clara, robusta y convincente que justificara comenzar un proceso disciplinario. Sin embargo, le recomendó enfáticamente al licenciado Rodríguez López que, para evitar este tipo de situación en un futuro, redactara un contrato que especificara la gestión acordada.

Examinada la reacción del quejoso al informe,[6] emitimos una Resolución instruyendo a la Procuradora General a presentar la Querella correspondiente y ésta así lo hizo. Los cargos en contra del querellado son los siguientes:

### Cargo I

El licenciado Juan C. Rodríguez López incurrió en conducta que violenta los preceptos enunciados en los Cánones de Ética Profesional, 4 LPRA Ap. IX, y en específico en cuanto al Canon 18 al no ejercer la diligencia y competencia que se requiere en la defensa y protección de los intereses de su cliente en el asunto encomendado causando con ello la pérdida de la causa de acción que tenía su cliente disponible.

### Cargos II

El licenciado Juan C. Rodríguez López incurrió en conducta constitutiva de violación al Canon 19 de Ética Profesional al no mantener informado de manera adecuada a su cliente de las gestiones realizadas en cuanto al asunto encomendado y el resultado de las mismas. También faltó al deber de informar clara y adecuadamente el término que tenía disponible el cliente para instar una reclamación judicial.

### Cargo III

El licenciado Juan C. Rodríguez López violó las disposiciones del Canon 38 de Ética Profesional, 4 LPRA Ap. IX, C. 38, el cual requiere de todo abogado el esforzarse al máximo de su capacidad en la exaltación del honor y la dignidad de su profesión y no incurrir en conducta impropia o la apariencia de la misma. El asunto traído a la atención del Honorable Tribunal Supremo presenta una conducta indebida y/o apariencia de ésta por permitir que prescribiera la causa de acción que

---

[6] En ésta, el quejoso alegó que en la primera entrevista le entregó al querellado y a su hermano los documentos relacionados a su accidente. Además, indicó que no se reunió con los abogados cerca del 27 de octubre de 2010, sino que se comunicó con ellos telefónicamente en el 2011 y en esa conversación fue que se habló sobre la necesidad del perito.

tenía su cliente mientras existía una relación abogado-cliente entre estos.

Luego de varios trámites, el licenciado Rodríguez López contestó la querella y negó los cargos imputados. Alegó que estuvo en comunicación con su cliente, a pesar de tratarse de un caso que aparentemente carecía de mérito. En apoyo de su contención, señaló que de los propios escritos del quejoso surgía que éste tenía conocimiento de los trámites que se realizaban con relación a su caso. Además, informó que tomó medidas en su práctica para supervisar la comunicación con sus clientes y de esa manera evitar querellas erróneas.

Examinada la querella y la contestación del licenciado Rodríguez López, nombramos a la Hon. Crisanta González Seda, Ex Jueza del Tribunal de Primera Instancia, como Comisionada Especial para que recibiera la prueba y nos rindiera un informe con las determinaciones de hechos y las recomendaciones que estimara pertinentes. En una vista celebrada el 10 de noviembre de 2015, la Lcda. Minnie H. Rodríguez López, Procuradora General Auxiliar, presentó como testigo al quejoso, mientras que el querellado presentó el testimonio de los licenciados José Luis Rivera e Iván Horacio Ayala Cádiz, como evidencia de su buena reputación. Asimismo, declararon el querellado y su hermano, el Lcdo. Juan Oscar Rodríguez López.

En su informe, la Comisionada Especial concluyó que el querellado violó los Cánones 18 y 19 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 18 y C. 19. Sin embargo, en cuanto al último cargo determinó que "no hubo evidencia adicional [a las actuaciones que violaron los Cánones 18 y 19], clara, robusta y convincente, que de por sí demostrara que el querellado no se conduce de forma digna y honorable y que su conducta realmente afecta sus condiciones morales, como requiere el Canon 38, supra".[7] Recomendó que, al imponer una sanción, este Tribunal considerara jurisprudencia en la cual se censuró enérgicamente a abogados que desatendieron órdenes de los tribunales y, como consecuencia, les archivaron los casos. Véase In re Rivera Nazario, 2015 TSPR 109, 193 DPR ___ (2015); In re Santos Cruz, 2015 TSPR 75, 193 DPR ___ (2015); In re Hernández González, 188 DPR 721 (2013).

Examinemos la normativa aplicable a este asunto.

## II

Como es sabido, los miembros de la profesión legal en nuestra jurisdicción tienen que cumplir con las normas mínimas de conducta establecidas en el Código de Ética Profesional, supra. In re Suárez Jiménez, 192 DPR 152, 159 (2014). En lo pertinente, el Canon 18 del Código de Ética Profesional, supra, le impone a los abogados y abogadas el deber de "defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo

---

[7] Informe de la Comisionada Especial, pág. 26 (énfasis omitido).

saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable". Asimismo, le exige que rindan una labor idónea, competente y que se preparen adecuadamente sin causarle gastos o demoras irrazonables a su cliente o a la administración de la justicia. Por tanto, incurre en una violación al Canon 18 el abogado que actúa con displicencia, dejadez y desidia en el trámite de sus casos. In re Rivera Nazario, supra, pág. 10; In re Pestaña Segovia, 192 DPR 485, 494 (2015); In re Suárez Jiménez, supra, pág. 160; In re Pietri Torres, 191 DPR 482, 488 (2014). También contraviene dicho canon cuando permite que expire el término prescriptivo o jurisdiccional de una acción. In re Pestaña Segovia, supra, págs. 494-495; In re Suárez Jiménez, supra, pág. 160; In re Pietri Torres, supra, pág. 488.[8]

Por otro lado, el Canon 19 del Código de Ética Profesional, supra, dispone que "[e]l abogado debe mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado". Dicha obligación incluye comunicarle las gestiones realizadas, así como el desarrollo de éstas,

---

[8] Otras conductas que este Tribunal ha reconocido que son contrarias al Canon 18 de Ética Profesional, supra, son las siguientes: "(1) no comparecer a los señalamientos del tribunal; (2) no contestar los interrogatorios sometidos; (3) no informar a las partes sobre la presentación de un perito; (4) desatender o abandonar el caso, (...) y (6) cualquier tipo de acción negligente que pueda conllevar o resulte en la desestimación o el archivo del caso." In re Suárez Jiménez, 192 DPR 152, 160 (2014); In re Pietri Torres, 191 DPR 482, 488 (2014). (énfasis omitido)

consultarle los asuntos que estén fuera del ámbito discrecional del abogado y seguir sus instrucciones, siempre que estén dentro del marco ético. In re Rivera Nazario, supra, pág. 13.

En consecuencia, se viola el referido canon cuando "no se atienden los reclamos de información que el cliente solicita; no se le informa del resultado adverso de la gestión encargada; la acción se desestima o se archiva; no se mantiene al cliente al tanto del estado o la situación procesal del caso, o, simplemente, se le niega información del caso". In re Reyes Coreano, 190 DPR 739, 752-753 (2014). Cabe mencionar que este deber es unidireccional, es decir, se le impone al abogado y no al cliente. In re Rivera Nazario, supra, págs. 13-14.

El Canon 38 de Ética Profesional, supra, establece que los letrados deben "esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia". En consecuencia, tienen que conducirse en forma digna y honorable, tanto en su vida privada como en su desempeño profesional. Se entenderá que una conducta viola este canon cuando afecta las condiciones morales del abogado y hace que sea indigno de pertenecer a este foro. In re Suárez Jiménez, supra, pág. 164; In re Reyes Coreano, supra, pág. 758. "Esto significa que no se puede concluir que un abogado violó el

Canon 38 por el simple hecho de violar otros cánones de ética profesional, sino por aquella conducta que es contraria a los valores principales de la profesión: la dignidad y el honor". In re Reyes Coreano, supra, pág. 758. Véase In re Suárez Jiménez, supra, pág. 164. Es decir, procede disciplinar a un abogado por violar el Canon 38 del Código de Ética Profesional, supra, cuando la conducta, de por sí, transgrede las obligaciones de ese canon. In re Villalba Ojeda, 2015 TSPR 143, pág. 11, 193 DPR ____ (2015).[9]

Por último, está firmemente establecido que las determinaciones de hechos emitidas por un Comisionado o Comisionada Especial merecen nuestra deferencia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. In re Vera Vélez, 192 DPR 216, 228 (2015). Claro está, esta Curia puede adoptar, modificar o rechazar

---

[9] Para fines ilustrativos, hemos determinado que un licenciado incurrió en una violación al Canon 38 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 38, en los siguientes casos: In re Reyes Coreano, 190 DPR 739, 761 (2014) (determinamos que las actuaciones del licenciado atentaron contra el honor y la dignidad de la profesión porque (1) "negó representar al quejoso aun cuando había evidencia de un contrato de servicios profesionales y una factura que demostraba que había cobrado honorarios de abogado", (2) "siendo abogado del quejoso representó a otro cliente en contra de este con intereses adversos", y (3) "durante todo el proceso disciplinario faltó a la verdad sobre los hechos ocurridos con el señor Delbrey Rivera y nunca aceptó sus actuaciones erróneas. Sus alegaciones, en todo momento, fueron inconsistentes, confusas y alejadas de la verdad"); In re Suárez Jiménez, supra, pág. 171 (determinamos que el licenciado violó el Canon 38, supra, por revelar un patrón de conducta que laceraba la buena imagen de la profesión); In re Vera Vélez, 192 DPR 216, 230 (2015) (encontramos una violación a ese canon porque transcurrieron quince años desde la otorgación de unas escrituras y todavía no estaban inscritas en el Registro de la Propiedad porque durante dicho término no se realizaron gestiones fructíferas y eficaces); In re Pestaña Segovia, 192 DPR 485, 498 (2015) (concluimos que desatender los requerimientos de la Procuradora General, así como los de este Tribunal, es un conducta que en sí misma viola los cánones 9, 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 9, C. 35 y C. 38).

el informe rendido. <u>In re Vera Vélez</u>, <u>supra</u>, págs. 228-229.

Apliquemos este marco legal a los hechos ante nuestra consideración.

III

En los primeros dos cargos contra el licenciado Rodríguez López se alega que éste no cumplió con los Cánones 18 y 19 del Código de Ética Profesional, <u>supra</u>, al no mantener informado ni proteger diligente y competentemente los intereses de su cliente, causando así que este perdiera su causa de acción. Examinada la conducta del querellado entendemos, al igual que la Comisionada Especial, que éste fue diligente en las etapas preliminares de su intervención al orientar al quejoso y hacer la reclamación extrajudicial.

Sin embargo, luego de enviar la carta el 12 de mayo de 2010 y concederle treinta días a la compañía para que aceptara la oferta, el licenciado Rodríguez López no dio seguimiento alguno al caso hasta el mes de octubre de 2010. Además, cabe aclarar que se comunicó en esa fecha con la compañía de ajustadores porque el quejoso le informó que habían denegado la oferta. Por tanto, no fue porque le preocupaba no haber recibido una respuesta, según alegó en su contestación a la queja. Tampoco se comunicó con su cliente durante ese término, a pesar de que el 6 de julio de 2010 el quejoso le envió un correo electrónico preguntando por el estatus de su caso.

Se le añade que después de conocer que la compañía de ajustadores archivó el caso, citó al quejoso para explicarle la necesidad de un perito y, una vez el señor Martínez Madera le indicó que buscaría uno por su cuenta, no le advirtió cuándo vencía el término prescriptivo de su acción. Así las cosas, el querellado aceptó en sus comparecencias que no supo más del quejoso hasta que recibió la carta de 17 de octubre de 2011 por parte de este último.

Se desprende del trámite anterior, que el licenciado Rodríguez López no dio seguimiento alguno a la gestión encomendada, aun sabiendo que el término prescriptivo estaba transcurriendo y que su cliente podía perder su causa de acción, como en efecto ocurrió. El querellado, una vez vio que el señor Martínez Madera no informaba que consiguió un perito, no podía cruzarse de brazos y dejar que prescribiera la acción. Por otro lado, si posteriormente determinó que el caso no tenía méritos, como alega en su contestación a la querella, debió comunicárselo al quejoso y renunciar al mismo. Lo anterior para que el señor Martínez Madera tuviera la opción de contratar otra representación legal antes de perder su causa de acción.

En cuanto a la comunicación entre el querellado y el señor Martínez Madera, la Comisionada Especial encontró probado que el quejoso intentó comunicarse por teléfono con el querellado y no recibió respuesta, excepto en dos

ocasiones en el 2011. Además, las únicas comunicaciones escritas entre ambos fueron por parte del quejoso el 6 de julio de 2010 y el 17 de octubre de 2011. No hubo evidencia de llamadas, correos electrónicos o cartas enviadas por parte del querellado al quejoso en un intento de comunicarse con él. En vista de lo anterior, concluimos que el licenciado Rodríguez López violó los Cánones 18 y 19 del Código de Ética Profesional, supra.

En cuanto al tercer cargo presentado por la Procuradora General, coincidimos con la Comisionada Especial y determinamos que el querellado no violó el Canon 38 del Código de Ética Profesional, supra. No hay duda de que el querellado no fue diligente al atender el asunto que le fue encomendado y tampoco se comunicó con su cliente como es debido, razón por la cual procede sancionarlo por violar los Cánones 18 y 19 del Código de Ética Profesional, supra. Sin embargo, según expuesto previamente, no procede sostener que se violó el Canon 38, supra, sólo porque el letrado contravino lo dispuesto en otros cánones de ética profesional. En consecuencia, al considerar la conducta en controversia entendemos que ésta, de por sí, no afectó las condiciones morales del licenciado Rodríguez López de manera que lo hizo indigno de pertenecer al foro.

IV

Resta determinar la sanción disciplinaria que nos corresponde imponer, evaluando lo siguiente: "el historial

previo del licenciado; su reputación en la comunidad; si la conducta se realizó con ánimo de lucro; si aceptó los cargos imputados; su arrepentimiento; y cualquier otra consideración que se estime pertinente." In re Toro González, 2015 TSPR 134, pág. 25, 193 DPR ____ (2015).

Surge del informe rendido por la Comisionada Especial que el licenciado Rodríguez López presentó dos testigos de reputación, los licenciados José Luis Rivera[10] e Iván Horacio Ayala Cádiz.[11] Ésta concluyó que el querellado goza de una reputación profesional y personal excelente. Además, no tiene querellas anteriores ni pendientes adicionales a ésta, cumplió con todas las órdenes emitidas en el procedimiento y no le cobró honorarios al quejoso por las gestiones realizadas. En consideración a lo anterior, la Comisionada Especial entendió que la conducta del querellado en este caso se trató de un hecho aislado y no un patrón de conducta. Sin embargo, cabe mencionar que el querellado no aceptó los cargos en su contra, a pesar de que tomó medidas en su oficina para supervisar más eficientemente la comunicación con sus clientes.

En vista de lo anterior, estimamos procedente censurar enérgicamente al licenciado Rodríguez López y apercibirle que, de incurrir en conducta impropia en el

---

[10] El Lcdo. José Luis Rivera conoce al querellado desde hace 5 a 6 años. Opina que es conocedor del derecho, minucioso y muy generoso al compartir sus experiencias y conocimientos. *Informe de la Comisionada Especial*, pág. 12.

[11] El Lcdo. Iván Horacio Ayala Cádiz declaró que el licenciado Rodríguez López fue su oficial jurídico mientras se desempeñaba como Juez Superior y lo conoce desde que nació. Opina que el desempeño del letrado es excelente. *Informe de la Comisionada Especial*, pág. 13.

futuro, podrá ser sancionado de forma más severa, incluyendo la suspensión de la profesión.[12] Además, le advertimos que debe ceñirse estrictamente a los preceptos que rige el Código de Ética Profesional.

Se dictará sentencia de conformidad.

---

[12] Véase In re Rivera Nazario, 2015 TSPR 109, pág. 21, esc. 12, 193 DPR ____ (2015).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Juan C. Rodríguez López                    CP-2013-24


SENTENCIA

En San Juan, Puerto Rico, a 4 de agosto de 2016.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, se censura enérgicamente al Lcdo. Juan C. Rodríguez López por infringir los Cánones 18 y 19 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 18, C. 19. Se le apercibe que, de incurrir en conducta impropia en el futuro, podrá ser sancionado de forma más severa, incluyendo la suspensión de la profesión. Además, se le advierte que debe ceñirse estrictamente a los preceptos que rige el Código de Ética Profesional.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Rivera García concurre y hace constar la siguiente expresión:

"El Juez Asociado señor Rivera García concurre por entender que a la luz de los hechos de este caso, procedía imponer una sanción de suspensión de tres meses de la práctica de la profesión de la abogacía, según resolvimos en In re: Liliana Morell Bergantiños, 2016 TSPR 128, 195 DPR ____".


                    Juan Ernesto Dávila Rivera
                    Secretario del Tribunal Supremo