EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br> Israel Roldán González | 2016 TSPR 81 <br><br> 195 DPR \_\_\_\_ |

Número del Caso: CP-2011-16

Fecha: 19 de abril de 2016

Oficina de la Procuradora General:

> Lcda. María C. Umpierre Marchand
> Procuradora General Auxiliar
>
> Lcdo. Luis R. Román Negrón
> Procurador General
>
> Lcda. Tatiana M. Grajales Torruella
> Subprocuradora General
>
> Lcda. Karla Z. Pacheco Álvarez
> Procuradora General Auxiliar
>
> Lcda. Edna Evelyn Rodríguez Benítez
> Procuradora General Auxiliar
>
> Lcda. Margarita Mercado Ehegaray
> Procuradora General Auxiliar

Abogado del Querellado:

> Lcdo. Harry N. Padilla Martínez

Comisionado Especial:

> Hon. Flavio E. Cumpiano Villamor

Materia: Conducta Profesional – La suspensión de la abogacía y notaría será efectiva el 20 de abril de 2016, fecha en que se le notificó al abogado de su suspensión inmediata.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

In re:

Israel Roldán González        CP-2011-0016      Conducta
Profesional

*PER CURIAM*

En San Juan, Puerto Rico, a 19 de abril de 2016.

En el caso que reseñamos a continuación, nos vemos obligados a intervenir con un letrado que, luego de iniciada la relación abogado-cliente, abandonó el asunto encomendado por su representada y falló a su deber de mantener una comunicación directa y efectiva con ella. Esta conducta, sin lugar a dudas, constituye una afrenta patente a los deberes prescritos en los Cánones 18 y 19 del Código de Ética Profesional. 4 LPRA Ap. IX, Cs. 18 y 19 (2012) (Cánones 18 y 19). Evaluado su proceder en ese asunto y, de conformidad con el derecho aplicable, adelantamos que lo suspendemos del ejercicio de la abogacía y la notaría. Examinemos,

pues, las circunstancias fácticas que sustentan nuestra determinación.

## I

### A. Hechos

La Sra. Judy Nieves Ramírez (señora Nieves o Querellante) es propietaria y presidenta de ABC Infantil, Inc. (ABC Infantil o la Corporación), una compañía sin fines de lucro dedicada al cuido de niños, así como a la educación prescolar. En diciembre de 2007 ABC Infantil suscribió un Contrato de Creación de Empleo con la Administración de Desarrollo Socioeconómico de la Familia del Departamento de la Familia (ADSEFDF o la Agencia).[1] A cambio de recibir una subvención económica, la Corporación se obligó a reclutar, adiestrar, capacitar y emplear a cinco (5) participantes del Programa de Asistencia Temporera para Familias Necesitadas, creado en virtud de legislación federal. El contrato tendría vigencia desde el 26 de diciembre de 2007 hasta el 30 de septiembre de 2008.

Durante el mes de abril de 2008 representantes de la ADSEFDF llamaron a la Querellante para advertirle que cancelarían el contrato por alegaciones de maltrato institucional a menores.[2] El 14 de mayo de 2008 la Agencia notificó formalmente a la Corporación la resolución del

---

[1]     Es menester mencionar que no surge claramente la fecha precisa del documento al cual hacemos referencia.

[2]     Las alegaciones consistían en que, presuntamente, amarraba a los niños en las sillas cuando no exhibían una buena conducta.

acuerdo. Como producto de la investigación realizada por la ADSEFDF, la señora Nieves fue acusada por el delito de maltrato a menores.**3** Celebrado el juicio en su fondo, el 23 de junio de 2009 el Tribunal de Primera Instancia declaró a la Querellante *No Culpable* del delito imputado.

Según consignado por el Comisionado Especial en su Informe, la Querellada entendía que la investigación que culminó en su procesamiento criminal fue fabricada y estuvo fundada en declaraciones falsas. Decidió, por lo tanto, buscar orientación legal para instar una acción civil contra el Gobierno que le permitiera, según ella, vindicar su nombre, su reputación y el de la Corporación. Así es como el 9 de septiembre de 2009 la señora Nieves acudió, junto con su hermana, al despacho del Lcdo. Israel Roldán González (licenciado Roldán o el Querellado).**4**

En esa primera reunión, la cual se extendió por aproximadamente media hora, la Querellante le relató al letrado lo sucedido y le explicó lo de la alegada fabricación del caso criminal en su contra por parte de la Agencia. Considerado el origen de los fondos del acuerdo entre ABC Infantil y la ADSEFDF, el Querellado le indicó a la señora Nieves que podría haber jurisdicción federal en el asunto. Asimismo, le advirtió que, por haber

---

**3** Conforme disponía el Art. 75 de la Ley Núm. 177-2003 (Derogada), 8 LPRA sec. 450c (2006), o Ley para el Bienestar y la Protección Integral de la Niñez.

**4** El Lcdo. Israel Roldán González (licenciado Roldán o el Querellado) fue admitido al ejercicio de la abogacía el 26 de junio de 1970 y prestó juramento como notario el 23 de julio de ese mismo año.

transcurrido más de un año desde la resolución del contrato, su acción personal en daños por incumplimiento de contrato había prescrito.

El licenciado Roldán le requirió a la Querellante todos los documentos atinentes al proceso aludido. Le informó, además, la necesidad de probar los daños económicos. Por último, le explicó que sus honorarios sumarían el 33% de la indemnización obtenida y le solicitó $3,000 para los gastos del caso, incluyendo la traducción de los documentos al idioma inglés. La señora Nieves le pidió tiempo para conseguir el dinero, ya que al no contar con fondos, tendría que tomarlo prestado. Culminada la reunión, la Querellante, así como su hermana, entendieron que el abogado sometería una reclamación en daños y perjuicios en el foro federal.

Una semana más tarde, la señora Nieves se presentó a la oficina del Querellado para entregarle un cheque emitido a su favor por la suma solicitada. Igualmente, le suministró una caja con los documentos atinentes a la gestión delegada al abogado, todos relacionados a la investigación llevada a cabo por la ADSEFDF, tales como declaraciones juradas, credenciales, el Contrato de Creación de Empleo y comunicaciones suyas con el Departamento de la Familia. El licenciado Roldán los examinó brevemente. En esa ocasión no realizó observación

alguna sobre los materiales provistos, ni le requirió prueba documental adicional.[5]

Luego de esta segunda reunión, el licenciado Roldán no volvió a comunicarse con la señora Nieves, a pesar de las múltiples llamadas telefónicas, mensajes y gestiones hechas por ella para conocer el estatus de su caso.[6] Así las cosas, para el mes de marzo de 2010 la Querellante se presentó nuevamente a la oficina del Querellado. En esta ocasión, fue atendida por el Lcdo. Joel López Borges (licenciado López), empleado del bufete del licenciado Roldán. En la breve entrevista que se prolongó de cinco a diez minutos, éste no le pudo orientar ni proveerle información alguna sobre el caso.

En cierto momento después de esa reunión, los licenciados Roldán y López tuvieron oportunidad de discutir entre ellos y estudiar con detenimiento el asunto delegado por la señora Nieves. Examinado el contrato concluyeron que, si bien surgía de los hechos alegados la posibilidad de entablar una reclamación en el foro estatal por incumplimiento de contrato, no existía jurisdicción federal sobre la materia. Razonaron, además, que la causa de acción pertenecía a la entidad corporativa y no a la

---

[5]     Según hizo constar el Comisionado Especial en su Informe, no se formalizó la relación mediante un contrato escrito de servicios profesionales y se ignora dónde el Querellado consignó el dinero entregado para los gastos del caso.

[6]     Cabe destacar que la señora Nieves solicitó una cita con el licenciado Roldán, pero su secretaria le informó que éste no podría atenderla ya que no contaba con espacio disponible. Incluso, en una ocasión la Querellante acudió a la oficina del abogado sin cita, y se sentó a esperar, mas nunca fue atendida por su personal.

señora Nieves, por lo que la Querellante estaba impedida de demandar por los daños personales sufridos a consecuencia de la resolución del Contrato de Creación de Empleo. Determinaron entonces, que necesitarían, entre otras cosas, prueba de los daños a la Corporación. El Querellado no reveló a la Querellante la más reciente teoría legal concerniente al asunto encomendado.

La señora Nieves se personó a la oficina del licenciado Roldán en compañía de su hermana en **junio de 2010.** La atendió, nuevamente, el licenciado López, quien en esta ocasión le anunció que se le había asignado su caso.[7] Asimismo, le indicó que estaba impedido de presentar una acción legal ante el foro federal por falta de jurisdicción sobre la materia. Dado que ya no era necesaria la traducción de los documentos, la Querellante le requirió la devolución de los $3,000 entregados al Querellado. No obstante, el licenciado López le informó que no procedía el reembolso.

Por otra parte, el licenciado López le confirmó que la causa de acción en daños y perjuicios pertenecía a la Corporación. La señora Nieves entendió que el abogado no le veía posibilidades al caso y lo que pretendía era disuadirla de iniciar un proceso judicial. Sin embargo, al ella insistir, el licenciado López afirmó que presentaría la reclamación de ABC Infantil. El licenciado

---

[7] La Querellante ignoraba que en la oficina del licenciado Roldán se le podían delegar los casos a otros abogados. El Querellado nunca le orientó sobre este particular.

López le solicitó a la señora Nieves toda la documentación que sustentara la existencia de la Corporación y la alegada pérdida económica. Al salir de la reunión, tanto la Querellante como su hermana tenían la expectativa de que se presentaría el caso. La señora Nieves nunca suministró la prueba que le fuera requerida en esa reunión.

Ni el licenciado Roldán ni el licenciado López sometieron la reclamación judicial, ya que, según ellos, al no contar con la prueba necesaria, no tenían certeza del derecho de la Corporación a ser indemnizada. Tampoco le dieron seguimiento a la Querellante mediante comunicación telefónica o escrita sobre los documentos solicitados.

Pasado el tiempo sin recibir información sobre el estado de su caso y sintiéndose defraudada, el 12 de noviembre de 2010 la señora Nieves presentó una Queja ante la Oficina de la Procuradora General (Procuradora). El 27 de diciembre de 2010 tras recibir la comunicación de la Queja en su contra, el licenciado Roldán le extendió un cheque a la Querellante devolviéndole los $3,000 que ella le había adelantado.

Por su parte, la señora Nieves, frustrada y decepcionada, no hizo gestión ulterior para contratar los servicios de otro abogado que atendiera el asunto que le fuera delegado al Querellado.

**B. Trámite Disciplinario**

Presentada la Queja y su correspondiente contestación, la Procuradora investigó los hechos antes relatados y nos remitió su Informe. Considerado el mismo, así como el Escrito en Cumplimiento de Resolución interpuesto por el Querellado, el 21 de octubre de 2011 ordenamos se sometiese querella contra el licenciado Roldán. El 23 de noviembre de 2011 se presentó la Querella mediante la cual se le formularon dos cargos al licenciado Roldán por presuntamente infringir los Cánones 18 y 19 del Código de Ética Profesional.

El 14 de marzo de 2012 el Querellado contestó la Querella. En esencia, negó las imputaciones éticas en su contra y nos urgió a desestimar los cargos presentados. Más adelante, el 23 de mayo de 2012, designamos al Lcdo. Flavio E. Cumpiano Villamor, exjuez del Tribunal de Primera Instancia, para que fungiera como Comisionado Especial (Comisionado).

Transcurridos varios incidentes procesales, la vista en su fondo se celebró el 3 de febrero de 2015. El Comisionado rindió su Informe y encontró infringidas las dos disposiciones éticas imputadas. Tras haber solicitado la grabación de los procedimientos y luego de concederle varias prórrogas, finalmente el 13 de octubre de 2015 el licenciado Roldán presentó su reacción al Informe. En su escrito, reiteró su rechazo a las infracciones éticas imputadas y solicitó su archivo.

**II**

**A. Canon 18: *Competencia del Abogado y Consejo al Cliente***

"'Los Cánones de Ética Profesional establecen las normas básicas que deben regir la relación de un abogado con su cliente. … Su gestión profesional debe llevarse a cabo aplicando en cada caso sus conocimientos, experiencia y habilidad desempeñándose de una *forma adecuada y responsable, capaz y* efectiva'". (Énfasis en el original). In re Filardi Guzmán, 144 DPR 710, 715 (1998), citando a In re Acosta Grubb, 119 DPR 595, 602 (1987). En virtud de lo anterior, el Canon 18 del Código de Ética Profesional exige a cada abogado desplegar el más alto grado de **diligencia, competencia y responsabilidad** en su quehacer profesional. Así, el abogado incurre en una falta al Canon 18 cuando, a pesar de asumir la representación legal de un cliente, demuestra una capacitación inadecuada o presta una atención indebida a la causa encomendada. In re Nieves Nieves, 181 DPR 25 (2011).

Todo abogado tiene el deber ético de conocer el ordenamiento legal y actuar de conformidad al mismo. In re Ayala Vega I, 189 DPR 672 (2013); In re Nieves Nieves, *supra*. Una representación legal adecuada presupone que el abogado posee los conocimientos y las destrezas jurídicas vinculadas a su gestión profesional. El abogado logra este objetivo sometiéndose a un estudio riguroso y continuo de las normas legales aplicables a las

controversias planteadas en cada uno de sus casos. Véase Canon 2, 4 LPRA Ap. IX, C. 2 (2012).

Asimismo, el abogado está obligado a defender diligentemente, con celo y dentro del marco ético, los derechos e intereses de su cliente. In re Rivera Nazario, 2015 TSPR 109, 193 DPR ___ (2015); In re Cuevas Borrero, 185 DPR 189 (2012). Esto significa que, cuando acepta la representación legal de una persona, debe realizar todas las gestiones para las cuales fue contratado de manera adecuada, responsable, efectiva y oportuna, sin dilaciones que puedan afectar la tramitación o la rápida solución de la controversia. In re Miranda Daleccio, 2015 TSPR 127, 193 DPR ___ (2015); Pueblo v. Quiles Negrón, et al., 2015 TSPR 116, 193 DPR ___ (2015); In re Pietri Torres, 191 DPR 482 (2014). La inacción, la imprudencia, el desinterés y la desidia en la tramitación de los asuntos que le han sido confiados, constituyen una patente infracción al Canon 18. In re Miranda Daleccio, supra. Véanse, además, In re Hance Flores, 2015 TSPR 126, 193 DPR ___ (2015); In re Díaz Nieves et als., 189 DPR 1000 (2013).

Un letrado es negligente en su quehacer profesional cuando, entre otras cosas: (1) abandona o desatiende el caso; (2) no comparece a los señalamientos realizados por el foro judicial o el administrativo; (3) permite que expire un término prescriptivo o jurisdiccional de una acción; (4) comete errores crasos, e (5) incurre en una actuación negligente que resulta en la desestimación o

archivo del caso. In re Miranda Daleccio, *supra*; In re Rivera Nazario, *supra*. También, hemos indicado que un abogado que tarda irrazonablemente en realizar la gestión para la cual fue contratado o simplemente no la hace, muestra una conducta indiferente, incompatible con su deber ético de diligencia. In re Villalba Ojeda, 2015 TSPR 143, 193 DPR ___ (2015); In re Flores Ayffán, 150 DPR 907 (2000); In re Corujo Collazo, 127 DPR 597 (1990).

**B. Canon 19: *Información al Cliente***

La obligación que consagra este precepto ético es una separada e independiente del deber de diligencia. In re Rivera Nazario, *supra*; In re Colón Morera, 172 DPR 49 (2007). Constituye un elemento inherente a la relación fiduciaria que caracteriza el vínculo abogado-cliente. In re Miranda Daleccio, *supra*; In re Santos Cruz, 2015 TSPR 75, 193 DPR (2015). En virtud de lo anterior, el Canon 19 del Código de Ética Profesional le requiere a todo miembro de la profesión legal mantener a sus clientes continuamente informados de los acontecimientos medulares relacionados al asunto objeto de la representación legal. Véanse, In re Santos Cruz, *supra*; In re Pacheco Pacheco, 192 DPR 553 (2015); In re Cardona Vázquez, 108 DPR 6 (1978). Esto supone tenerlos al tanto del estado de la encomienda, su progreso y las gestiones realizadas; consultarle todo aspecto que rebase el ámbito discrecional de la representación legal, así como acatar sus directrices, siempre y cuando estén dentro del marco

ético.  *In re Rivera Nazario*, *supra*; *In re Cuevas Borrero*, *supra*; *In re Acosta Grubb*, *supra*.

La comunicación efectiva entre el abogado y su cliente es un componente esencial de la relación profesional.  *In re Nieves Nieves*, *supra*.  Por ello es menester que la información sobre el caso sea brindada directamente al representado y no mediante terceros o intermediarios.  *In re Santos Cruz*, *supra*; *In re Muñoz, Morell*, 182 DPR 738 (2011).  El abogado no puede delegar en otros lo que le compete o está obligado a realizar como parte de su quehacer ético-profesional.

Es pertinente recalcar que el Canon 19 no incorpora una obligación recíproca o bilateral.  Más bien, le impone al abogado, no a su cliente, un deber unidireccional de comunicación continua.  *In re Rivera Nazario*, *supra*; *In re Nieves Nieves*, *supra;* *In re Santos Cruz*, *supra*; *In re Muñoz, Morell*, *supra*.

Las circunstancias de cada caso determinarán la información que es indispensable brindarle al cliente.  Sin embargo, no cabe duda que un abogado lesiona este precepto cuando, por ejemplo: (1) no responde a los reclamos de información de su representado, *In re Hernández Pérez I*, 169 DPR 91 (2006); (2) se torna inaccesible, *In re Díaz Alonso, Jr.*, 115 DPR 755 (1984); (3) evade a su cliente, *Íd.*, y (4) no le advierte sobre las gestiones realizadas para tramitar la causa de acción encomendada, *In re Nieves Nieves*, *supra*.  Cuando un

cliente alega que el abogado lo mantuvo ajeno de las incidencias de su caso, corresponde al letrado indicar qué esfuerzos razonables realizó para comunicarse con él. In re Nieves Nieves, *supra*.

Por último, es importante que el cliente tenga suficiente información para poder tomar una determinación respecto a los asuntos legales que le confía a su abogado. De esa manera, el abogado previene los malentendidos que generan expectativas falsas en el cliente que, a su vez, pueden desembocar en infracciones éticas.

**C. Sanción Disciplinaria**

Al fijar la sanción disciplinaria que habrá de imponérsele a un abogado que ha exhibido una conducta antiética, procede considerar los siguientes factores: (1) la reputación del abogado en la comunidad; (2) su historial disciplinario; (3) si la conducta es una aislada; (4) si medió ánimo de lucro; (5) si presentó una defensa frívola de su conducta; (6) si ocasionó perjuicio a alguna parte; (7) si resarció al cliente; (8) si demostró aceptación y arrepentimiento sincero por la conducta que le fuera imputada; (9) así como cualquier otra consideración atenuante o agravante que surja de los hechos. In re Miranda Daleccio, *supra*; In re Planas Merced, 180 DPR 179 (2010).

A fin de alcanzar una reglamentación ética uniforme y coherente, es necesario tratar las faltas semejantes del mismo modo. In re Rivera Nazario, *supra*; In re Díaz

Alonso, Jr., *supra*. Esto significa que, al decidir la sanción disciplinaria, es forzoso ponderar las sanciones que hemos impuesto a otros miembros de la profesión en casos semejantes, pero sin dejar de reconocer que cada uno de éstos presenta circunstancias únicas y determinantes. In re Villalba Ojeda, *supra*; In re De León Rodríguez, 190 DPR 378 (2014). "Lo importante es que cuando nos apartemos de los precedentes similares, brindemos una explicación satisfactoria que justifique nuestro proceder". In re Villalba Ojeda, *supra*, pág. 20.

## III

En consideración a todo lo anterior, entendemos que el licenciado Roldán incurrió en las dos infracciones éticas que figuran en la Querella. Veamos.

### A. Canon 18

El Canon 18 está redactado de manera abarcadora,[8] por lo que su aplicación no se ciñe a una fase específica de

---

[8] Cónsono a lo anterior, el Canon 18 expresa que:

Será impropio de un abogado asumir una representación profesional cuando está consciente de que no puede rendir una labor idónea competente y que no puede prepararse adecuadamente sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia.

Es deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable.

Este deber de desempeñarse en forma capaz y diligente no significa que el abogado puede realizar cualquier acto que sea conveniente con el propósito de salir triunfante en las causas del cliente. La misión del abogado no le permite que en defensa de un cliente viole las leyes del país o cometa algún engaño. Por consiguiente, al sostener las causas del cliente, debe actuar dentro de los límites de la ley, teniendo en cuenta no sólo la letra de ésta, sino el espíritu y los propósitos que la informan. No debe tampoco ceder en el cumplimiento de su deber por temor a perder el favor judicial ni la estimación popular. No obstante, un abogado puede asumir cualquier representación profesional si se prepara

la relación profesional o a una etapa del caso. Por el contrario, las obligaciones pautadas por el Canon 18 surgen a partir del momento en que nace la relación abogado-cliente y se extiende durante el tiempo que ésta dure. Tampoco está supeditado a situaciones en las que el representado ha visto afectada su causa de acción por alguna actuación u omisión del letrado.

Por lo tanto, una vez aceptó la representación legal de la señora Nieves, el licenciado Roldán estaba obligado a actuar de conformidad con los deberes prescritos en el Canon 18, independientemente de la naturaleza de la reclamación o de su desenlace. En otras palabras, asumida la encomienda profesional tenía que actuar con diligencia y responsabilidad. No existe justificación para haberse tardado tanto en hacer un análisis legal de la situación por el simple hecho de que la causa de acción fuese una de naturaleza contractual, como planteó en su último escrito.[9]

De la prueba presentada surge que el 9 de septiembre de 2009 la señora Nieves procuró la asesoría legal del Querellado para presentar una reclamación contra el Gobierno por la resolución de un contrato habido entre la

---

adecuadamente para ello y no impone gastos ni demoras irrazonables a su cliente y a la administración de la justicia. 4 LPRA Ap. IX, C. 18 (2012) (Canon 18).

[9]     Para justificar su proceder en este tema, expresó lo siguiente:

A[u]n asumiendo sobre el tema de la diligencia, la realidad es que la reclamación fue atendida, estudiada, se brindó opinión y se requirió una información. **En una acción de quince años, no hay razón para que se tenga que apresurar de manera irrazonable el atender el asunto.** (Énfasis nuestro). *Escrito Fijando Posición en cuanto al Informe del señor Comisionado Especial*, pág. 11.

Corporación y la ADSEFDF. Luego de que ésta le divulgara ciertos detalles del asunto a encomendarle, el letrado compartió su impresión inicial de los hechos, le orientó acerca de sus honorarios y le solicitó todos los documentos que dieron origen al proceso penal en su contra. A la semana siguiente, confiada en las representaciones hechas durante su primer encuentro, la Querellante le entregó el dinero requerido para los gastos de tramitación del caso y le suministró la documentación precisada.

El licenciado Roldán finalmente hizo un estudio del asunto que trajera a su atención la Querellada, **luego de seis meses de haber sido contratado.** No constituye una conducta antiética de por sí, el que un abogado, tras efectuar un análisis ponderado de la controversia que se le presenta, llegue a una opinión legal distinta a la inicial. Es posible que suceda así, ya que durante la primera reunión con su representado el abogado discute detalles atinentes a la contratación y descansa en la información que recoge de la entrevista, sin oportunidad de poder estudiar y revisar todos los detalles del caso. Lo inaceptable es que, tal y como sucedió en este caso, después de contar con todos los datos pertinentes, el jurista se dilate injustificadamente en realizar un examen competente y oportuno para corroborar la existencia de una causa de acción y en cuál foro encausarla.

Por otro lado, como bien argumenta el Querellado en su escrito, la normativa ética releva a un abogado de la obligación de presentar una demanda, si éste no cuenta con la cooperación del cliente o con la información pertinente para sustentar sus alegaciones. Véase, In re Rivera Nazario, supra; In re Pinto Andino, 156 DPR 259 (2002). De lo contrario, incurriría en una conducta impropia vedada por la reglamentación de la profesión legal. Sin embargo, es importante aclarar que, contrario a lo aquí acontecido, el abogado debe acreditar cada uno de los esfuerzos razonables y diligentes, conducentes a obtener la cooperación del cliente en su representación legal, como lo serían cartas, llamadas, mensajes, entre otras.[10] De esta manera, descarga su responsabilidad frente al cliente y frente a esta Curia.

Recapitulando, tal y como plasmó el Comisionado en su Informe, una vez surgió la relación profesional, el Querellado desatendió el asunto que le fuera encomendado por la señora Nieves. Eso fue así, a pesar de que la responsabilidad ética que fija el Canon 18 lo obligaba a realizar un análisis profundo y oportuno de las

---

[10]    Al discutir acerca de los documentos que le fueron solicitados a la señora Nieves, el Querellado justificó su proceder argumentando lo siguiente:

> Ante el hecho de que se le dijo personalmente, cuál era la razón para hacer el requerimiento por escrito. De hecho, si se hubiera plasmado por escrito el requerimiento, la situación sería más fácil desde el punto de vista evidenciario. Sin embargo, el señor Comisionado reconoció que la información se requirió. Y, que no se trajo. ¿Qué otra información tenía el licenciado Roldán González que suplirle a la señora Nieves Ramírez? La respuesta es simple, ninguna. Todo lo importante que tenía que informársele se le informó. […]. *Escrito Fijando Posición en cuanto al Informe del señor Comisionado Especial*, pág. 14.

circunstancias particulares del caso. Esa actitud indiferente e incompetente generó en su cliente desconfianza y un gran escepticismo, que lesionó la relación profesional. El descuido, la irresponsabilidad, la inacción y la imprudencia desplegadas por el licenciado Roldán en el manejo del asunto que le fuera delegado por la señora Nieves son conductas inaceptables, proscritas por el Canon 18 de Ética Profesional y que se apartan de lo que debe ser una representación legal adecuada.

**B. Canon 19**

Una vez contratado, el Canon 19 impone al abogado sostener una comunicación directa y efectiva con el cliente sobre la gestión y estado de su caso. Según quedó establecido, luego de la segunda reunión en septiembre de 2009 en la cual recibió el dinero, el licenciado Roldán se desentendió del asunto, y no volvió a intercambiar información alguna con la señora Nieves, pese a la insistencia de ésta última de conocer del progreso de su reclamación. El propio Querellado reconoce que, contrario a lo que exige el Canon 19, delegó la comunicación y el seguimiento de todos los asuntos al personal de apoyo de su oficina. Reiteramos que esta obligación ética es personal e indelegable, por lo cual no podía descansar en otros y mucho menos encomendarle al personal clerical suplir el tipo de información requerida por la clienta.[11]

---

[11] De todos modos, tampoco ese personal pudo proveerle a la señora Nieves dato alguno pertinente al asunto.

El Querellado defendió su proceder alegando que:

> Una lectura del Informe del Comisionado tiende a dar la impresión de que era obligación del licenciado Roldán González contestar todas y cada una de las llamadas que hiciera a su oficina la señora Nieves Ramírez. Y, siempre estar disponible en la oficina para atenderla. La realidad es que los servicios profesionales en los pueblos de la isla no funcionan así. […]. *Escrito Fijando Posición en cuanto al Informe del señor Comisionado Especial*, pág. 13.[12]

Si bien es cierto que un abogado no está obligado a dar seguimiento directo a todo requerimiento que haga su representado sobre la gestión que le ha sido delegada, la realidad es que la información que intimó la señora Nieves no era irrelevante. De otra parte, ella tenía derecho a conocer del licenciado Roldán cuál era el estatus y progreso de su reclamación.[13] De los hechos surge claramente que el Querellado se tornó inaccesible, nunca le dio cita de seguimiento y no le devolvió tan siquiera una llamada.

Asimismo, es importante destacar que el licenciado Roldán no le explicó a la señora Nieves el funcionamiento interno de su oficina. Recordemos que no es hasta marzo

---

[12] Contrario a lo que plantea el Querellado, una comunicación directa y efectiva no implica estar presente en la oficina para atender todo reclamo de información que haga el cliente. El Canon 19 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 19 (2012) (Canon 19), le requiere responder oportunamente a las solicitudes razonables de información. En las circunstancias de este caso, dado a que su personal estaba al tanto de la preocupación de la clienta, el licenciado Roldán debía, como mínimo, llamarla, ofrecerle una cita o realizar cualquier otra diligencia para lidiar con la preocupación de la señora Nieves.

[13] Como bien consigna el Comisionado en su Informe, el Querellado no volvió a comunicarse en forma alguna con la señora Nieves, ya fuese para: indicarle sobre las gestiones realizadas en el análisis del caso; la preparación para su tramitación; requerirle información adicional, u orientarle sobre sus nuevas perspectivas legales.

de 2010, cuando la señora Nieves se presenta a las facilidades del bufete del Querellado y finalmente la atienden, que se entera por primera vez que debía discutir los pormenores de su caso con otro abogado. El licenciado Roldán no le advirtió que había delegado el asunto a uno de sus empleados. Este proceder negligente, sin contar con el consentimiento informado de la clienta, igualmente infringe el Canon 19 de Ética Profesional.

Todo lo anterior provocó un estado de desconfianza y decepción en la clienta, lo cual se hubiese evitado si el abogado, desde un principio, hubiese mantenido una comunicación directa y efectiva con ella, conforme lo exige el Canon 19.

## C. Sanción Disciplinaria

Ahora, solo nos resta determinar la sanción disciplinaria a imponerle al abogado.[14] Entendemos que el licenciado Roldán actuó correctamente al devolverle a la

---

[14] El Comisionado Especial no hizo una recomendación específica sobre la sanción a imponerle al Querellado. Un estudio de la jurisprudencia más reciente revela lo siguiente:

(1) **Suspendimos tres meses** a una letrada que, en lo pertinente, faltó a los **Cánones** 9, 12, **18**, 20 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX, Cs. 9, 12, 18, 20 y 38 (2012) (Cánones 9, 12, 18, 20 y 38). In re Villalba Ojeda, 2015 TSPR 143, 193___ (2015).

(2) **Suspendimos por tres meses** a un letrado del ejercicio de la abogacía, arrepentido y **sin historial disciplinario**, por apartarse de los **Cánones** 12, **18**, **19** y 38 de Ética Profesional. In re Miranda Daleccio, 2015 TSPR 127, 193 DPR ___ (2015).

(3) **Censuramos enérgicamente** a un abogado que **aceptó** haber quebrantado los Cánones **18**, **19**, 20 y 38. In re Rivera Nazario, 2015 TSPR 109, 193 DPR ___ (2015). **Esta era la primera falta del letrado en poco más de dos décadas.** Íd.

(4) Por infringir los **Cánones 18** y **19**, **censuramos enérgicamente** a un abogado y le ordenamos restituirle a su clienta $500. In re Santos Cruz, 2015 TSPR 75, 193 DPR ___ (2015). Consideramos su buena reputación profesional y la **falta de antecedentes disciplinarios**. Íd.

(5) Por infringir los **Cánones** 12, **18** y **19**, **suspendimos tres meses** a un abogado. In re Arroyo Rivera, 148 DPR 354 (1999). Esta constituía su **primera falta** y había resarcido a su cliente. Íd.

señora Nieves la suma de dinero que ésta le adelantara por concepto de gastos de un litigio que nunca se concretó. No obstante, esperó a que la Querellante presentara la Queja para entonces proceder a reembolsarlo, a pesar de conocer que su clienta no contaba con el dinero y lo había tomado prestado.[15]

De sus comparecencias ante esta Curia se desprende que el **licenciado Roldán no reconoce sus faltas éticas**. Tanto así que entiende actuó correctamente en la asesoría y gestión del asunto delegado por la señora Nieves. Así aparece diáfanamente plasmado en cada una de sus alegaciones.

Cabe destacar que, según se desprende de la propia Queja, la clienta estaba confrontando una situación personal y económica difícil, luego de haberse resuelto el contrato de la Corporación con la ADSEFDF, y más adelante, ser procesada criminalmente. Ante ese escenario, tuvo que enfrentar la desatención del licenciado Roldán González quien, una vez cobró el dinero, abandonó el asunto que se le había confiado, apartándose de los estándares mínimos de conducta que establece nuestra reglamentación ético-profesional. El hecho de que la señora Nieves aún pueda tener una reclamación vigente, no justifica la dilación del abogado en atender el asunto.

---

[15]   Recordemos que la señora Nieves le había hecho el requerimiento al licenciado López en junio de 2010.

Finalmente, no podemos pasar por alto que en el expediente del licenciado Roldán constan antecedentes de procesos disciplinarios. **Su ejecutoria profesional de sobre 40 años ha sido objeto de varios señalamientos.** En particular, en el asunto CP-2006-0025, por unos acontecimientos similares a los aquí relatados, el 30 de julio de 2009 ordenamos su archivo, no sin antes advertirle que, en lo sucesivo, debía ser más diligente en sus gestiones profesionales, o de lo contrario, estaría expuesto a sanciones disciplinarias mayores.[16] **El Querellado estaba apercibido que, de repetirse su conducta antiética, nos obligaría a intervenir con mayor severidad.**

### IV

En vista de lo anterior, decretamos la suspensión inmediata del Lcdo. Israel Roldán González del ejercicio de la abogacía y de la notaría, por un periodo de **90 días** contados a partir de la notificación de esta Opinión *Per*

---

[16] Conforme los hechos que surgen de la Querella en el asunto CP-2006-0025, la señora Mary Ann Irizarry Abreu (señora Irizarry) expresó que el 23 de diciembre de 2002 fue a la oficina del licenciado Roldán en busca de asesoría legal. Interesaba presentar una demanda en daños y perjuicios por un supuesto allanamiento ilegal de su residencia efectuado por unos miembros de la Policía de Puerto Rico. El Querellado opinó que era más conveniente presentar esa acción ante el foro federal. El 17 de enero de 2003, la señora Irizarry le adelantó $5,000, así como los documentos pertinentes. El abogado no presentó la acción y el 16 de agosto de 2005 le devolvió el dinero, alegando que ella no tenía un buen caso. Ya para ese entonces, el término prescriptivo para incoar la reclamación había transcurrido.

Ambos llegaron a un acuerdo, mediante el cual el Querellado, sin aceptar los hechos, resarció a la señora Irizarry. Así las cosas, considerado el Informe de la Comisionada Especial, mediante Resolución de 30 de julio de 2009 ordenamos el archivo del CP-2006-0025, con el debido apercibimiento.

Por otro lado, siendo representante legal por contrato de la Asamblea Municipal de la ciudad de Aguadilla, representó a ciertos ciudadanos en pleitos contra ese mismo municipio, lo que constituyó una conducta opuesta al Canon 21 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 21 (2012). In re Roldán González, 113 DPR 238 (1982). En ese asunto, también le advertimos que en el futuro debía ser más escrupuloso en el ejercicio de la profesión legal. Íd.

*Curiam* y Sentencia. Le ordenamos notificar a todos sus clientes de su inhabilidad para continuar representándolos y devolverles tanto los expedientes de los casos pendientes como los honorarios recibidos por trabajos no rendidos, e informar oportunamente de su suspensión a los distintos foros judiciales y administrativos en los que tenga algún asunto pendiente. Además, deberá acreditar y certificar a este Tribunal el cumplimiento con lo anterior, dentro del término de treinta (30) días, a partir de la notificación de esta Opinión *Per Curiam* y Sentencia. Por su parte, se ordena al Alguacil de este Tribunal a incautar inmediatamente la obra y el sello notarial del Lcdo. Israel Roldán González y entregarlos al Director de la Oficina de Inspección de Notarías para el correspondiente examen e informe. Notifíquese personalmente esta Opinión *Per Curiam* y Sentencia al Lcdo. Israel Roldán González a través de la Oficina del Alguacil de este Tribunal.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Israel Roldán González                                    Conducta
                              CP-2011-0016                Profesional


SENTENCIA


En San Juan, Puerto Rico a 19 de abril de 2016.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte íntegra de la presente Sentencia, decretamos la suspensión inmediata del Lcdo. Israel Roldán González del ejercicio de la abogacía y de la notaría por un periodo de noventa (90) días contado a partir de la notificación de la Opinión *Per Curiam* y de esta Sentencia.

El Lcdo. Israel Roldán González deberá notificar a todos sus clientes de su inhabilidad para continuar representándolos y devolverles tanto los expedientes de los casos pendientes, así como los honorarios recibidos por trabajos no rendidos, e informar oportunamente de su suspensión a los distintos foros judiciales y administrativos en los que tenga algún asunto pendiente. Además, deberá acreditar y certificar a este Tribunal el cumplimiento con lo anterior, dentro del término de treinta (30) días, a partir de la notificación de la Opinión *Per Curiam* que antecede y de esta Sentencia. Por su parte, se ordena al Alguacil de este Tribunal a incautar inmediatamente la obra y el sello notarial del Lcdo. Israel Roldán González y entregarlos al Director de la Oficina de Inspección de Notarías para el correspondiente examen e informe.

Notifíquese personalmente la Opinión *Per Curiam* que antecede y esta Sentencia al Lcdo. Israel Roldán González a través de la Oficina del Alguacil de este Tribunal.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Kolthoff Caraballo no intervino.


Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo